CUSHING COCA-COLA BOTTLING
CO. v. FRANCIS.

No. 34873.   June 3, 1952.

*245 P. 2d 84.*

Rittenhouse, Hanson, Evans & Turner, Oklahoma City, for plaintiff in error.

Brown Moore and Preston Moore, Stillwater, for defendant in error.

DAVISON, J.   This is an action brought by Luther Francis, as plaintiff, against the Cushing Coca-Cola Bottling Company, a corporation, as defendant, for damages resulting from his drinking a sip or two of a bottled Coca-Cola, in which, because of the alleged negligence of said defendant, there was a partially decomposed body of a mouse. Judgment for $1,625 in conformity with the jury verdict was rendered in favor of plaintiff, and defendant has appealed. The parties will be referred to as they appeared in the trial court.

On March 24, 1949, plaintiff, a 46 year old man, was employed by A. and M. College Book Store in Stillwater, Oklahoma, as assistant manager. About the middle of the morning, on that day, the plaintiff and a traveling salesman, with whom he had transacted some business, went to a coin operated vending machine in the store to obtain and drink a bottled Coca-Cola each. Two were removed from the machine, one of which was handed to the plaintiff who took a swallow of it and then remarked that it didn't taste right. It was set back and plaintiff obtained another one which he drank. While he was getting the second one, his friend discovered and called plaintiff's attention to the partially decomposed body of a mouse in the first bottle. Plaintiff immediately became nauseated and went to the rest room where he vomited. He left his work and went home where he remained until the afternoon of the following day.

The only testimony as to what effect the experience had on him was that of plaintiff himself. He testified that it was several days before his appetite returned and also testified as follows:

"* * * Well, it has caused a very bad effect. I have had a phobia for all types of soft drinks dispensed in bottles since. I mean by that, I have a dread, a fear—I don't dare to participate in bottled drinks. I tried it one time since with a group of fellows. I was unable to go through with it. It was another type of soft drink. It wasn't the type that this was. I wasn't able to go through with it—I set the bottle down without any comment in

regard to it at all—fellows I suppose that I was drinking with knew anything about it, contents of the bottle they had procured—since that time I haven't had a drink of this type of beverage to my knowledge, except for a few swallows of another soft drink, is all I have drank. * * *"

"* * * I have been unable to attend, to appear in spots where there are crowds, organizations, anything of that nature, because of the fact this subject is generally used, brought up, it is very nauseating, very sickening.

"Q. Explain what you mean by 'spots' or 'groups' or clubs. A. For example, coffee shops that I frequent frequently, associations that I had in spots of that nature, in little old places where we have coke or coffee and those kind of things, I have had to dodge those places because of the bad effect it has on my nervous system. * * *"

This and other testimony contained in the record conclusively shows that the alleged injuries, for which plaintiff sought to recover, were of such a character that only an expert could testify as to their cause and extent.

Although several propositions are presented and much space in the briefs of the parties is devoted to arguments about the rules of law applicable to such a situation, both in actions in tort for negligence, in which the evidentiary rule of res ipsa loquitur is involved, and in actions on implied contract for breach of implied warranty of fitness, no recovery can be had under any theory unless it is first established by proper and competent evidence that plaintiff has suffered a resulting injury for which the defendant is liable in damages. Plaintiff offered no proof by a physician or medical expert tending to establish the cause or extent of any disability he may have had. What effect his two tastes of the contaminated beverage had or might have had was fundamentally essential to his right to recover even though the defendant was undeniably derelict in a duty owed him. The rule of law is established in this jurisdiction that where an injury is of such character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science and must necessarily be determined by the testimony of skilled and professional persons, and cannot be determined by the testimony of unskilled witnesses having no scientific knowledge of such injuries. Willet v. Johnson, 13 Okla. 563, 76 P. 174; Ft. Smith & W. R. Co. v. Jones, 63 Okla. 228, 163 P. 1110; Ft. Smith & W. Ry. Co. v. Hutchinson, 71 Okla. 139, 175 P. 922; Inter Ocean Oil Co. v. Marshall, 166 Okla. 118, 26 P. 2d 399; Cohenour v. Smart, 205 Okla. 668, 240 P. 2d 91.

The record contains no testimony, either medical or lay, that plaintiff suffered any physical injury resulting from his drinking a small amount of the contents of the bottle. Objecting to the taste, he obtained another bottle from the vending machine and began drinking from it. He became nauseated when his attention was called to and he discovered what was in the first bottle. In other words, his nausea stemmed exclusively from his mental reaction. He had no mental effect from a physical reaction. Mental pain, suffering and anguish, unless resulting from and necessarily a part of physical suffering and injury and inseparable therefrom, do not constitute an injury for which recovery may be had.

"It is the law of Oklahoma that no recovery can be had for mental suffering which is not produced by, connected with or the result of physical suffering or injury to the person enduring the mental anguish." St. L. & S. F. Ry. Co. v. Keiffer, 48 Okla. 434, 150 P. 1026; Thompson v. Minnis, 201 Okla. 154, 202 P. 2d 981.

An entirely different question would have been presented had the plaintiff became nauseated and vomited as a result of the taste or toxic effect of the contaminated drink and had the mental condition been a result of or connected with the physical reaction. Proof of such a condition, however, would have to be made by competent qualified wit-

nesses as above discussed. But the testimony of plaintiff negatives such a conclusion. A careful examination of the record reveals that plaintiff suffered no physical injury; that his remaining away from work was only because his feelings were hurt and he had considerable embarrassment from being "kidded" about the incident. The "phobia" about which he testified had no foundation on or connection with physical injury. The witness' examination by his attorney likens it to the superstitions of a black cat crossing a path and of walking under a ladder and of opening an umbrella in the house. These mental peculiarities may be disagreeable and embarrassing but they cannot be classed as injuries for which damages are recoverable in the absence of proof of physical injury from which they spring. Their cause and extent and their causal connection with wrongdoing on the part of the defendant are questions of science and must necessarily be determined by the testimony of skilled and professional persons. There being an entire failure of such proof, the trial court was in error in overruling defendant's demurrer to plaintiff's evidence and motion for an instructed verdict.

The judgment is reversed.

HALLEY, V.C.J., and WELCH, GIBSON, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.