Flavia A. JINES, Administratrix of the Estate of Rufus A. Jines, Deceased, Plaintiff in Error,

v.

CITY OF NORMAN, a Municipal Corporation, Defendant in Error.

No. 38466.

Supreme Court of Oklahoma.

May 10, 1960.

IRWIN, Justice.

Plaintiff, as Administratrix of the Estate of her deceased husband, Rufus A. Jines, instituted an action against the City of Norman, a Municipal Corporation, alleging three causes of action for the negligence of the servants, agents and employees of the defendant, resulting in the death of the said Rufus A. Jines. After all evidence on behalf of the plaintiff had been introduced, the trial court sustained a demurrer to the evidence as to the first cause, being for the wrongful death, and third cause, being for funeral expense, and after both sides had closed, the trial court directed a verdict in favor of the defendant as to the second cause, being for pain and suffering. After motion for new trial was overruled, the plaintiff perfected this appeal. The parties will be referred to as they appeared in the trial court.

### Pleadings

The plaintiff alleges the defendant is a municipal corporation and a city of the first class; that it owns and operates the Municipal Hospital of Norman, Oklahoma, and as such, employs nurses, aids and other employees for the care and attention of patients; that such employees are the servants, agents and employees of the defendant and as such were successively in charge of the patients.

That on August 23, 1956, Rufus A. Jines was admitted to the hospital as a paying patient and under a contractual relationship became subject to the care and attention of defendant; that defendant, as proper medical treatment, commenced a continuous supply of oxygen to the said Rufus A. Jines, for his relief; that the oxygen was contained in a high pressure tank and administered by means of a mask that fitted over the patient's head and the supply of oxygen caused the patient to improve. That on two occasions about 1:30 p. m. on the 25th, and about 1:30 a. m. on the 26th of August, 1956, the nurses charged with changing oxygen tanks, carelessly and negligently permitted the tank of oxygen being administered to become exhausted and

Charles D. Crandall, Fletcher Riley, Oklahoma City, Homer Cowan, Norman, for plaintiff in error.

Foliart, Hunt & Shepherd, Oklahoma City, for defendant in error.

after a delay, failed to relieve the excessive pressure on the new tank and made connection of the new tank with the mask and caused the oxygen, under excessive pressure, to flow into the mask which had been replaced over the patient and into his nose and throat causing him to strangle, suffer great and excruciating pain and suffering and resulting in his death about 2:15 a. m., on the morning of the 26th of August. That Jines was 58 years old and had a life expectancy of 15.39 years with earnings of $400 per month. The first cause of action prayed for damages for wrongful death of decedent.

The allegations in the first cause of action were adopted in plaintiff's second and third causes of action for pain and suffering and funeral expenses.

The answer of the defendant was a general denial.

### Evidence

Records show patient was admitted to the hospital with a provisional diagnosis of Poss. Coronary Occlusion, Poss. Cerebral Vascular Accident, and Poss. Pulmonary Cong. The final diagnosis was Coronary Occlusion, and Pneumonia and complications of myocardial failure. Upon admission, in addition to medical treatment, oxygen was prescribed and started immediately. The hospital records, nurses' notes and the testimony of witnesses show improvement in patient's condition up to late afternoon of August 25th. The testimony reveals that around five-thirty that afternoon, the oxygen supply to the patient was exhausted; that another cylinder of oxygen was not standing by, but had to be obtained and brought to the room; that some trouble was encountered in changing over from the empty tank to the full tank during all of which time the patient was without oxygen and began gasping for breath. About the time the supply of oxygen was restored, Dr. R was called and he could not feel any pulse or blood pressure and patient was cyanotic. The doctor prescribed an ampule of coramine. The time patient was without oxygen was estimated at about fifteen minutes. The testimony was to the effect the patient, after this episode, became very apprehensive, constantly watched the gauge on the cylinder and would not sleep for watching the gauge. At eleven o'clock difficulty was again encountered in changing cylinders, but the interval the patient was without oxygen was short.

The testimony further shows that about two o'clock in the morning of August 26, difficulty was again encountered in changing over to a new cylinder. A sister-in-law of the patient testified the patient was without oxygen for thirty minutes or more; that when the change over to the new cylinder was effected, and the supply of oxygen turned on, it was turned on with such force that it blew the mask off the face of the patient, forced the fluid through which the oxygen flows into the face, nose and mouth of the patient causing him to strangle and that he died immediately. However, this statement is refuted by the testimony of the plaintiff by her statement that the patient talked to her twice after this occurrence. After the failure of the new cylinder to properly operate, a nasal catheter was inserted in the nose of the patient and oxygen from the old tank was supplied to the patient but he died about two-forty a. m. One witness, a steam fitter who helped make the change over on one or two occasions testified the employees didn't know how to make the change over and they showed a lack of training in this respect. Another witness testified one of the nurses said, "They expect you to use equipment that you know nothing about." At the close of plaintiff's evidence, the defendant demurred as to each cause of action. The Court sustained the demurrer as to the first and third causes of action and overruled it as to the second.

The defendant then offered as evidence the death certificate showing cause of death as coronary occlusion with pneumonia as a contributing factor. The methods of supplying oxygen to a patient as well as a full explanation of the workings of the Haliburton Deep Breather was given by witnesses. The attending physician testified

that patient was hospitalized with a heart condition and oxygen was prescribed; that patient deteriorated from the first time he saw him until his death; that there were periods when he rallied and seemed improved; that at six o'clock p. m. on the 25th, the patient's condition was poor, his pulse was weak and irregular and from his findings, and in his opinion the patient was in the early stages of shock. That when the tank pressure was reduced to 400 pounds, patient was getting as much oxygen as he would from a tank with 2,200 pounds. That when patient complained he was not getting enough oxygen around two o'clock on the morning of the 26th, and the pressure was 400 pounds, it indicates his heart had become so weak he wasn't absorbing enough oxygen to stay pink and be able to breathe even though he was getting all the oxygen that could be given him. If he were not absorbing the oxygen and it was not getting into his blood he would feel he was not getting enough oxygen through the mask or tube. Coronary occlusions are very painful and patient was in a critical condition from the first time he attended him until death. That patient was very apprehensive at the time he attended him at home and the apprehension continued throughout his hospitalization and until death.

The nurses and aides denied any trouble in changing from one tank to another or any unnecessary delay in restoring oxygen to the patient when the changes were made. Testimony by the nurse and aid on duty on the morning patient died testified at the time they changed tanks at two o'clock, there was 400 pounds pressure on the tank then being used but the change was made to suit the patient; that patient was having a hard time breathing and after the change was made he threw off the mask and complained he was not getting any oxygen; that they changed back to the old tank and used the nose catheter and he was then cyanotic, pulse very low and he was gasping for breath and the nurse gave him another injection to stimulate the heart.

## Contentions

The plaintiff contends the evidence was sufficient to make a prima facie showing as to the 1st and 3rd causes of action; that there was sufficient evidence to support a verdict in favor of the plaintiff as to the second cause of action; that plaintiff did not have a fair and impartial trial and the court erred in refusing to admit certain competent evidence offered by the plaintiff.

The defendant contends the evidence was insufficient and presented no issue to be submitted to the jury and the objections to the hypothetical questions were properly sustained.

## Conclusions

In as much as the evidence in support of the first and third causes of action to which a demurrer was sustained and the evidence on the second cause of action are so interwoven, these assignments will be considered together.

In considering the sufficiency of the evidence offered by the plaintiff in support of the first and third causes of action, we find the negligence complained of consists of the failure of the defendant to consistently keep oxygen supplied to the patient; that on three occasions, the supply of oxygen to the patient was entirely cut off, the first time for approximately fifteen minutes, the second for only a short undetermined period, and the third time for approximately thirty minutes; that noise and commotion were caused by the nurses and attendants in changing over from one tank of oxygen to another.

No testimony was produced by the plaintiff to the effect that the lack of oxygen as above outlined or the commotion complained of was the cause of the death. While it is true the plaintiff produced Dr. C. as a witness and asked him hypothetical questions, evidently trying to establish that the negligence complained of caused or could have caused the death, the trial court sustained objections to the hypothetical questions. The questions as propounded contained many deficiencies. Dr. C., dur-

ing questioning, finally stated the hospital records were incomplete in that nothing was shown after three o'clock p. m., and that he would have to know the man's condition before he could answer; that lack of information for the period of about four to six hours as to his physical condition made it impossible for him to answer. This admission by Dr. C., fully justifies the trial court's action in sustaining the objections to the hypothetical questions.

There was no further attempt on the part of the plaintiff to establish the lack of oxygen during the three periods complained of was the proximate cause of death of the patient.

 In an action for the recovery of damages for wrongful death of decedent, the burden of proof is upon the plaintiff to establish by competent evidence that a negligent or wrongful act of defendant was the proximate cause of death. Masonic Hospital Ass'n of Payne County, Okl. v. Taggart, 171 Okl. 563, 43 P.2d 142; Guthrie v. City of Henryetta, 177 Okl. 122, 57 P.2d 1165; and Lowden v. Friddle, 189 Okl. 415, 117 P.2d 533. Where all of plaintiff's evidence, together with all inferences and conclusions to be reasonably drawn therefrom is insufficient to point out clearly a causal connection between the alleged act of negligence of defendant and injury to plaintiff's decedent, the action of the trial court in sustaining a demurrer thereto is proper. Sheridan v. Deep Rock Oil Corporation, 201 Okl. 312, 205 P.2d 276.

 We therefore conclude the trial court did not err in sustaining the demurrer of the defendant to plaintiff's actions in damages for the wrongful death and funeral expenses of the decedent for the reasons plaintiff did not establish by competent evidence a causal connection between the alleged acts of negligence of defendant and the injury to the decedent or that the alleged acts were the proximate cause of his death.

The trial court directed a verdict in favor of defendant in plaintiff's second cause of action for severe and excruciating con-

scious pain and suffering and mental anguish. There is no evidence that decedent was in pain, other than the pain attendant on his condition and caused by the heart condition from which he was suffering. The only evidence in support of this cause of action is to the effect decedent became scared when the pressure on the tank became low and more apprehensive during the change over of the oxygen tanks, and was nervous, upset and continually watched the gauge on the tanks. Therefore, if plaintiff is entitled to recover under this cause, it must be for mental anxiety and anguish and not for severe and excruciating conscious pain and suffering.

 We have heretofore determined there was insufficient evidence to establish that the acts of defendant, charged as negligence by plaintiff, were the proximate cause of death of decedent. And it is an established rule of law that recovery may not be had for mental anxiety and anguish which is not produced by, connected with, or the result of some physical suffering or injury to the person enduring the mental anguish. Thompson v. Minnis, 201 Okl. 154, 202 P.2d 981; Van Hoy v. Oklahoma Coca-Cola Bottling Co., 205 Okl. 135, 235 P.2d 948; and Cushing Coca-Cola Bottling Co. v. Francis, 206 Okl. 553, 245 P.2d 84.

 Since the evidence did not establish that decedent suffered severe and conscious pain and there is nothing to indicate that the mental anxiety and anguish was produced by, connected with or the result of some physical suffering or injury, other than that attendant to and caused by the heart condition of decedent, we can only conclude the trial court did not err in directing a verdict in favor of defendant in plaintiff's second cause of action.

The judgment of the trial court is therefore affirmed.

DAVISON, C. J., and HALLEY, JOHNSON, JACKSON and BERRY, JJ., concur.

BLACKBIRD, J., dissents.