Sylvia O'DELL, Appellant,

v.

DeJEAN'S PACKING CO., INC., Appellee.

No. 51179.

Court of Appeals of Oklahoma, Division 2.

July 18, 1978.

Rehearing Denied Aug. 14, 1978.

Certiorari Denied Oct. 11, 1978.

Released for Publication by Order of Court of Appeals Oct. 13, 1978.

Mark Hammons, Hammons & Stafford, El Reno, for appellant.

Carl E. Moslander, Oklahoma City, for appellee.

BACON, Judge.

Would one who opens a can of processed oysters purchased at the local grocery store "reasonably expect" to find a pearl? In this case appellant found a pearl and frac-tured three teeth in the discovery. Appellant is appealing a jury verdict in favor of the canning company which sold the oysters to the retail outlet where appellant pur-chased the oysters.

In 1976, appellee, DeJean Packing Co., Inc., of Biloxi, Mississippi, bought 2,000 cases of canned oysters from Moore Sea Food, also located in Biloxi, Mississippi. Appellee put its own label on the cans of oysters and sold them to retail outlets. One outlet was the main commissary at Tinker Air Force Base in Midwest City, Oklahoma.

Appellant is a 30-year-old "full-time graduate student and part-time secretary." On July 22, 1976, appellant purchased one of the above mentioned cans of oysters at Tinker Air Force Base. On August 5, 1976, she opened the can of oysters, mixed the contents with milk, butter and salt, and began eating the soup. Suddenly, when appellant bit down she experienced "very sharp pain through the whole right side" of her mouth. She spat out the contents of her mouth and discovered "a little raw pearl." Appellant further discovered that she had fractured three teeth on the "little raw pearl" which resulted in at least 14 trips to the dentist to have the teeth re-paired and capped.

Appellant filed the present suit on Octo-ber 29, 1976 for breach of implied warranty, praying for $350 in dental expenses and $9,500 for pain and suffering.

Appellee filed an answer in the form of a general denial. Appellee's answer also pled assumption of risk, unavoidable accident, contributory negligence, and the further de-fense "that a pearl can be reasonably ex-pected to be found in oysters."

The case was tried on May 16, 1977, re-sulting in a nine to three verdict for appel-lee.

Appellant is now challenging the ensuing judgment under two propositions of error. Under the first proposition appellant urges the trial court erred in refusing her re-quested instructions, while under the second proposition appellant argues the verdict is not supported by any competent evidence.

Appellant, in her argument relating to requested instructions, recites the requested instructions and urges the trial court erred in not giving same. Appellant, however, does not argue or state how or why these requested instructions stated the law better than those given by the trial court. In fact, the instructions that were given are never mentioned in her brief. We see no useful purpose in discussing the requested instructions as opposed to those given because we find the instructions given and requested omitted one very vital instruction; and that is, one which would inform the jury what is meant by the term "reasonably expected"—as the following discussion will disclose.

Oklahoma law includes the implied warranties that food purchased is merchantable and fit for the particular purpose bought. 12A O.S.1971 §§ 2–314—315. Most states, if not all, have similar laws; however, there is a division of authority as to what test or tests will be applied when a consumer is damaged by a food or drink item. Some states follow what has been labeled the "foreign-natural" test. Under this test, if the food item is contaminated by a foreign substance, the injured consumer can recover damages. Or, to state the test in the converse, if the substance in the food which caused the injury is natural to the food, the consumer cannot recover damages. Clear examples of natural substances would be chicken bones in chicken soup, seeds in fruit, or bones in meat.

Other jurisdictions follow what has been labeled the "reasonably expected" test. Under this test, if the substance which caused the damage can be "reasonably expected" to be in the food or drink, the consumer is deemed to be on guard for same and if injured the consumer cannot recover.

Until 1974, Oklahoma had never had a case wherein the substance which caused the injury was "natural" to the food served. That is, prior to 1974, the Oklahoma cases dealt with "foreign" objects such as a roach in a bottle of cola, or a body of a decomposed mouse in a cola bottle. *Oklahoma Coca-Cola Bottling Co. v. Dillard*, 208 Okl.

126, 253 P.2d 847 (1953); *Cushing Coca-Cola Bottling Co. v. Francis*, 206 Okl. 553, 245 P.2d 84 (1952).

In 1974, the Oklahoma Court of Appeals, Division 1, handed down the case of *Williams v. Braum Ice Cream Stores, Inc.*, Okl. App., 534 P.2d 700, wherein a consumer was injured by biting into a cherry seed after purchasing a cherry pecan ice cream cone. In following the "reasonably expected" test the court said:

"The 'reasonable expectation' test as applied to an action for breach of implied warranty is keyed to what is 'reasonably' fit. If it is found that the pit of a cherry should be anticipated in cherry pecan ice cream and guarded against by the consumer, then the ice cream was reasonably fit under the implied warranty.

.     .     .     .     .

"We hold that the better legal theory to be applied in such cases is the 'reasonable expectation' theory, rather than the 'naturalness' theory as applied by the trial court. What should be reasonably expected by the consumer is a jury question, and the question of whether plaintiff acted in a reasonable manner in eating the ice cream cone is also a fact question to be decided by the jury."

▇ In Oklahoma, the finding of a deleterious item in packaged food under the doctrine of res ipsa loquitur creates a prima facie case the food was not merchantable. *Oklahoma Coca-Cola Bottling Co. v. Newton*, 205 Okl. 360, 237 P.2d 627 (1951). Therefore, the burden is shifted to the defendant to prove the plaintiff should have "reasonably expected" to find the item and therefore guarded against injury by same. Thus, we conclude the "reasonably expected" test is a defense and must be pled and proven as such.

In the fast moving world today all aspects of life and law are continually transforming to keep in step with our rapidly changing manner of living. That is to say, more prepared food is bought than ever before in history. Complete meals are prepared from frozen or canned products and

consumed. With such changes in demand for prepared foods so must the laws protecting the consumers change.

Oftentimes, extensive damage and even death is caused by a substance in the prepared food that is "natural" to the food item in its *original state.* Thus, there seems little logic in the "foreign-natural" test. It appears the weakness in this test leads to ridiculous results. Where is the line drawn? For example, chicken bones are natural to chicken, but so are beaks, claws, and intestines. One therefore wonders what the courts in the jurisdictions following the "foreign-natural" test would decide in the chicken soup case if it were a chicken beak or claw that caused the damage rather than a chicken bone, because all three parts are "natural" to the chicken. These jurisdictions appear to focus their attention on the product in its original or natural form and not on the end product bought by the consumer. Such reasoning assumes *all substances* which are natural to the food are anticipated to possibly be in the food *ultimately purchased in processed form.* Naturalness of substance can only be important in determining whether a consumer would anticipate or expect to find the substance in the food *as served or processed.*

If one purchases a whole fish to bake surely he or she could "reasonably expect" to find bones in it. However, if one purchases fish patties or fish sticks, it seems unrealistic to say he would "reasonably expect" to find bones in the processed items. Likewise, if one purchases oysters in the shell it might be said one could "reasonably expect" to find a pearl in one of the oysters. However, if one purchases canned processed oysters it seems unrealistic to say he could "reasonably expect" to find a pearl in same. Herein lies the difficulty or confusion in food cases. The *possibility* of finding a harmful substance versus the *probability* of finding a harmful substance seems the key in analyzing these cases. When one "expects" he looks "forward to the probable occurrence or appearance" that is con-

sidered "likely or certain."[1] So if one opens a can of processed oysters, certainly there is a *possibility* a pearl can be found but the *probability* of finding a pearl is remote. With possibility at one end of the scale and probability at the other end, it seems logical to determine that if one "reasonably expects" a "probable occurrence or appearance" that expectation leads us closer to the probability end rather than the possibility end. Another example of the end of the scale "reasonably expected" is closer to is found when one buys a prepared hamburger, for in this instance there is a *possibility* that a bone will be in it, but one does not "reasonably expect" to find one. Thus, it seems obvious that when one "reasonably expects" an occurrence or appearance, it is more *probable* than just possible.

If one "reasonably expects" to find an item in his or her food then he guards against being injured by watching for that item. When one eats a hamburger he does not nibble his way along hunting for bones because he is not "reasonably expecting" one in the food. Likewise, when one eats processed oysters, normally one does not gingerly graze through each oyster hunting for a pearl because he is not "reasonably expecting" one in the food. It seems logical some consideration should be given to the manner in which the food is normally eaten in determining if a person can be said to "reasonably expect" an item in processed food. In the present case we think the average, ordinary, reasonably prudent person eating processed oysters would eat same by way of bites and would not nibble her way through each oyster because of the possibility of finding a pearl. In fact, appellee's own witness testified as follows:

"Q. Do you know of any reason why a consumer should have to inspect your food product before he eats each morsel of it, sir?

"A. No, sir.

"Q. You don't believe that's necessary.

"A. (Shakes head.)

"Q. You know of any reason why he should anticipate finding a raw pearl in your food product?

1. The American Heritage Dictionary of the English Language 461 (1973).

"A. No, sir."

In the present case, in reading the instructions given and requested, we find no definition of what is meant by the term "reasonably expected." One can easily imagine without such a definition how the jurors could be confused, with some arguing there is a *possibility* of finding a pearl in canned oysters and others arguing that although it is true there is a possibility of such a discovery, it is not *probable* that a pearl would be found. Each juror would have little idea what is meant when the term "reasonably expected" is used. In the present case, the words "reasonably expected" were used in the given instructions only twice. First, the trial court instructed as follows:

"The Defendant further alleges that the Plaintiff should have 'reasonably expected' to find a pearl in the oyster."

The second time the term appeared was in the following instruction:

"The Defendant has the affirmative defense of proving by a preponderance of the evidence each of the following:

1) That the oysters in question were fit for the ordinary purposes for which such goods were used,

2) That the Plaintiff should have reasonably expected that a pearl or pearls could have been found in a can of oysters.

If you find that the Plaintiff has proven what she is required to prove as set forth above and you find that the Defendant failed to prove either of the items the Defendant is required to prove, then your verdict would be for the Plaintiff as against the Defendant. However, should you find that the Plaintiff has failed to prove what she is required to prove as set forth above or in the alternative that the Defendant has proved each of the items above, then your verdict would be for the Defendant."

Under these circumstances, without any instruction as to what is meant by "reasonably expected" the jury could not avoid confusion and we cannot say the jury knew what the basic law was to be applied to the case. This we think is analogous to instructing on contributory negligence without defining what it is, instructing on the last clear chance doctrine without defining it, or instructing on substantial performance without defining same. In *McGuigan v. Harris*, Okl., 440 P.2d 680 (1968), a case involving a lien foreclosure, the court stated:

"Under the circumstances it is apparent the trial court was required to define substantial performance by a wider explanation of the term, including fitness of the structure for the purposes for which presumably built. The omission to instruct the jury properly upon such fundamental issue constituted prejudicial error which requires reversal of the judgment and remand of the case for new trial. *Britton v. Groom*, Okl., 373 P.2d 1012."

We think that in preparing such an instruction in the present case consideration should be given to the fact that the term "reasonably expected" involves more of a probability than just a possibility.

The case is reversed and remanded for a new trial consistent with the views expressed herein.

NEPTUNE, P. J., and BRIGHTMIRE, J., concur.