## OKLAHOMA COCA-COLA BOTTLING CO. v. DILLARD.

No. 35252.   Jan. 10, 1953.

Rehearing Denied Feb. 24, 1953.

*253  P.  2d  847.*

Rittenhouse, Hanson & Evans, Oklahoma City, for plaintiff in error.

Howard K. Berry and James W. (Bill) Berry, Oklahoma City, for defendant in error.

HALLEY, V.C.J.   Jessie Dillard sued Oklahoma Coca-Cola Bottling Company and Safeway Stores, Inc., for damages for mental and physical pain and suffering alleged to have been the result of drinking a bottle of Coca-Cola which contained a dead Oriental cockroach, which insect in turn contained certain poisonous insecticides which contaminated the contents of the bottle, made her acutely ill, and resulted in a major abdominal operation.

Plaintiff alleged that the defendant bottling company processed, bottled, and securely capped the bottle of Coca-Cola which she drank and advertised it as a refreshing and wholesome beverage for human consumption, and wholesaled it to Safeway Stores, Inc., in Oklahoma City, from whom she purchased the bottle mentioned.

This action is based upon the implied warranty rule to the effect that where the processor of foods or beverages seals or caps its product in such manner that it reaches the consumer in the same condition as when it left the processor, there is an implied warranty that such product is wholesome and fit for human consumption.

Plaintiff alleges that on the afternoon of August 15, 1949, she took a bottle of Coca-Cola from the refrigerator in her home, having previously purchased it from Safeway Stores, Inc., which had obtained it at wholesale from defendant bottling company; that she removed the cap with a can opener and drank the contents of the bottle. That the liquid had a queer taste, and upon finishing the bottle she discovered that it contained a dead cockroach. Her husband replaced the cap on the bottle and it remained in its then condition until a chemist made an analysis of the roach and found that it contained traces of arsenic, fluoride, and copper.

It is further alleged that on the same evening she attended a buffet dinner

where she ate a number of foods such as slaw, potato salad, baked beans and weiners, and that upon returning to her home that night she became violently ill, vomited and suffered severe abdominal pains. She called her physician, who gave her a sedative about midnight; and upon returning next morning and finding her condition worse, he had her admitted to a hospital, where she underwent a major abdominal operation four days later; and that her injuries were permanent and progressive.

Defendant answered by general denial and pleaded negligence on the part of the plaintiff in drinking the Coca-Cola without first observing what was in the bottle.

The jury found for the plaintiff and awarded her damages in the sum of $7,500. It found for Safeway Stores, Inc., and that defendant is not involved in this appeal. We shall refer to the parties as they appeared in the trial court.

The principal contention of defendant is that the verdict in favor of plaintiff is not supported by sufficient competent evidence. The rule is well established in this state that where an injury is of such character as to require expert medical testimony to determine the cause and extent thereof, it can be determined only by those skilled in medical science and not by the testimony of laymen. Cohenour v. Smart, 205 Okla. 668, 240 P. 2d 91; and the more recent case of Cushing Coca-Cola Bottling Co. v. Francis, 206 Okla. 553, 245 P. 2d 84. The facts before us present such a case. Expert testimony is required to establish the causal connection between the ingestion by plaintiff of a poisonous beverage and her subsequent illness and operation. The plaintiff introduced the testimony of Dr. Kelso, a qualified medical expert, and that of Mr. McCarroll, a qualified chemist, who made an analysis of the contents of the roach some eighteen months after plaintiff discovered it in the Coca-Cola bottle from which she had just imbibed the contents. Mr. McCar-

roll testified that he found traces of arsenic, flouride, and copper, elements often used in insecticides. The first two elements named are classed as irritants, though copper is not.

Dr. Kelso testified that his diagnosis of plaintiff's illness, before the operation, was "an intestinal obstruction from a mechanical cause, either from an adhesion or what we call inoseception (sic; intussusception)—telescoping of the bowel * * *"; that after the operation he decided that she was suffering from "a chemical peritonitis", and that it was his opinion "that her illness was due to the contents—some of this material that had been ingested—the contents of the bottle of Coca-Cola."

Defendant claims that Dr. Kelso's testimony is not sufficient to warrant submission to the jury of the question of the cause of plaintiff's injury. It asserts that his testimony, and all reasonable inferences therefrom, force the jury to speculate as to what really caused plaintiff's illness and resultant suffering. We deem it necessary to quote the pertinent portions of Dr. Kelso's testimony as to the causal connection between plaintiff's drinking the Coca-Cola and her illness which followed.

Dr. Kelso said that plaintiff's health had been excellent; that after he was called to attend her on the night of August 15, 1949, she vomited and suffered abdominal pains until he deemed an operation necessary; that upon opening the abdominal cavity he found one and one-half pints of straw-colored fluid, and that her small intestine was red and inflamed. No chemical analysis was made of the vomitus, the urine, or the fluid found in the abdominal cavity, nor was any analysis made of the tissues or organs. He was asked for his opinion in regard to plaintiff's illness, and said:

"I was of the opinion that, this patient being well and then followed by the illness, and with the history obtained, there was no other conclusion to draw than that the contents of what she had ingested had to be taken into

consideration as the cause of her illness."

He further testified:

"Q. What was your opinion, Doctor? A. I was of the opinion that her illness was due to the contents—some of the material that had been ingested.

"Q. And what was that material? A. The contents of the bottle of Coca-Cola.

"Q. You testified yesterday that you did not know what compound or condition would be created by putting this roach into six ounces of bottled Coca-Cola? A. That's right.

"Q. You cannot say whether or not that caused her condition? A. I can't.

"Q. And, not knowing how much of any substance was in that bottle and not making any tests to determine what, if any, arsenic, fluoride or copper was in these secretions, the vomitus, the urine, you cannot state whether or not she ingested any substance in that which would cause this condition, is that right? A. Not positively: no sir."

Further:

"Q. In all your practice, have you ever seen a condition of this kind caused by a trace of fluoride? A. No, sir.

"Q. This is the first one? A. I am sure that I have never seen one.

"Q. Have you ever seen one caused by a trace of copper? A. No, sir.

"Q. And have never seen one caused by a trace of arsenic? A. That's right; I never have.

"Q. And you don't know whether there were any of those substances in this lady? A. No.

"Q. Do you know what they found in the bottle? A. Just those three substances, I don't know whether they tested it for other things or not.

"Q. Do you know whether those three, separately or individually, traces of them, ever caused such a condition as you found here? A. Not a trace. * * *

"Q. And you say that this lady's condition could not have been caused from a trace of the substances I mentioned, is that right? A. Not from a trace; no, sir."

He further testified that the condition of the plaintiff could have been caused by other factors than the drinking of the Coca-Cola, but his opinion was that her suffering was caused by the contents of the bottle of Coca-Cola. While the testimony shows that the roach contained only a trace of the poisons mentioned, it was analyzed more than a year after it had been left in the bottle, which contained only a small, dried trace of fluid. There is no showing that only a trace of the poison had been dissolved in the contents of the bottle before it was consumed by the plaintiff.

There is no direct evidence to indicate that the roach was not in the bottle when it left the control of the defendant bottling company. It is possible, but highly improbable, that the bottle had been opened and the roach permitted to enter it after it was delivered to the retailer. The rule of implied warranty announced in Ada Coca-Cola Bottling Co. v. Asbury, 206 Okla. 269, 242 P. 2d 417, is applicable here; and the doctrine of res ipsa loquitur, as announced in Oklahoma Coca-Cola Bottling Co. v. Newton, 205 Okla. 360, 237 P. 2d 627, is also applicable. The presence of a dead insect in a sealed bottle of beverage which is offered for human consumption speaks for itself and makes a prima facie case of negligence on the part of the bottler, in the absence of any proof that the bottle probably was not in the same condition when it reached the ultimate consumer as when it left the bottler.

Defendant alleges error in the refusal of the court to give its requested instruction No. 14. The substance of that instruction was that if the jury found that plaintiff drank a bottle of Coca-Cola containing a foreign substance, it must not presume that the injury resulted therefrom, and that the burden remained upon the plaintiff to prove that she was in fact injured by drinking a deleterious and harmful substance

contained in the bottle. We find that instruction No. 21, given to the jury, instructs it that:

"* * * Even if you should find from the evidence that the bottle of Coca-Cola contained a roach and a trace of copper and arsenic and sodium fluoride, before you can find for plaintiff you must find that such substances in the Bottle of Coca-Cola, or mixed with the Coca-Cola, was the proximate cause of plaintiff's illness, and unless you so find, your verdict must be for the defendant."

While the instruction given omits the requirement of expert testimony to establish the causal connection between the injury and alleged wrongful acts of the defendant, it clearly tells the jury that unless it finds that plaintiff's injuries were caused by drinking the polluted Coca-Cola it must find for the defendant. We think the instruction given fairly states the law of causal connection, and that the omission mentioned did not result in misleading the jury and constituted, at most, only harmless error.

The rule is well established in this state that where instructions, when taken as a whole, fairly state the law, they will be held sufficient, despite the fact that one or more of them, standing alone, might be incomplete. Shayler v. West, 199 Okla. 386, 185 P. 2d 957.

As to the permanency of plaintiff's injuries, the defendant complains of instruction No. 18, which instructs the jury that it may take into consideration, in connection with the amount of damages awarded, "the question of whether the injuries are permanent or temporary." Defendant contends that the testimony is not sufficient to warrant the consideration of whether plaintiff's injuries are permanent. Dr. Kelso testified that the scar made in the abdominal operation was permanent, and that plaintiff "has been very slow in her recovery." He further testified that plaintiff had considerable pain in her right arm shortly before the trial, but

that it was due to "the degeneration of the structure between two of her cervical vertebrae. She had no doubt had that for a good many years. After a prolonged illness, and she begins to have pain from it, one would certainly give some thought that the illness would contribute somewhat to the onset of this condition, which we believe she had had for many years."

The plaintiff, after testifying that she was not able to do any work for some time after she left the hospital on September 3, 1949, then testified:

"Q. Have you noticed any particular difference in your physical strength since this operation? A. I don't have the strength that I did.

"Q. What do you notice about the condition of your stomach—that is, with reference to your ability to digest food? A. Well, there are some foods that I don't digest at all.

"Q. What, if any, difference is there in the function of your nervous system, so far as you can tell? A. I think that I am more nervous than I was."

We think that the foregoing testimony is sufficient to warrant the instruction given. At least, it is certain that the scar from a six- or seven-inch abdominal incision is permanent, and that future adhesions may occur. The plaintiff was entitled to have the question of permanency submitted to the jury if there was any competent testimony indicating that her injuries were permanent, however slight and unimportant such permanent injuries might be. A year and a half had elapsed from the date of her operation up to the date of the trial. The general rule is stated in Sinclair Oil & Gas Co. v. Armour, 172 Okla. 442, 45 P. 2d 754, as follows:

"Where the very nature of plaintiff's injuries and the condition of plaintiff at the time of the trial are such that the jury may reasonably infer that plaintiff will suffer some future pain, it is not error to instruct the jury that such pain and suffering as appears reasonably certain that plaintiff will suf-

fer in the future, as a result of his injuries, may be considered in determining the amount of recovery in an action for damages for personal injuries."

Defendant's expert testimony is very elaborate and complete. We have considered it carefully, especially that based upon the hospital chart and the opinions of experts to the effect that they found nothing to indicate that plaintiff's illness was caused by drinking the bottle of Coca-Cola. The evidence of defendant showed that it used the utmost care in the manufacture and bottling of the Coca-Cola. It apparently uses every known modern device and scientific equipment to avoid the inclusion in its bottled beverage of any unwholesome element. However, the jury found for the plaintiff.

The judgment of the trial court is affirmed.

CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur. WELCH, GIBSON, and DAVISON, JJ., concur in conclusion.