Benita Helen KIRKLAND, Appellant,

v.

GENERAL MOTORS CORPORATION,
a foreign corporation, Appellee.

No. 45016.

Supreme Court of Oklahoma.

April 23, 1974.

C. B. Savage, Tulsa, and Doyle Watson, Drumright, for appellant.

Rhodes, Hieronymous, Holloway & Wilson by Bert M. Jones, Tulsa, for appellee.

DOOLIN, Justice.

The issue for us in this case is the present and the future of products liability litigation in Oklahoma. Much we do in this case may set the pattern of such litigation in Oklahoma and may determine whether this young, vigorous and progressive State shall now meet the challenge of the mass advertising of today, its hypnosis, and the pace and flow of the economics of the late twentieth century. Most of us were born in the waning days of the use of either animal or steam power and today we find ourselves anticipating the wonders of an age of jets, rockets, genetic science, and atomic energy. The law, likewise, finds itself confronted with the problems of change, not only in the field of torts, but probably in all of its many and broad areas.

So be it.

The facts in the case before us are as follows:

Plaintiff was injured in an automobile accident occurring as she entered I–44 in Tulsa County at approximately 3:00 a.m. on·August 9, 1969, while driving her roommate's 1969 Buick Opel, which had been manufactured by General Motors (GM) shortly before the accident. It developed that GM had mailed, on September 29, 1969, a notice to all owners of Opels a "recall" letter indicating "the seat back adjustment mechanism on your 1969 Opel may develop excessive clearance between the gears of the adjustor." She testified that on the night of the accident as she entered I–44 the following occurred:

"After I accelerated, I was driving casually along, very slowly, down the Skelly By-pass and suddenly the Opel went out of control on me. It seemed that I had no support behind me and I fell backward and I was looking at the ceiling and I did not know where I was going. I could not control the car."

She further indicated that after falling backward she could not reach the steering wheel and did not remember the head-on impact with an automobile in the opposite lane, recalling only the bump or jar as the Opel struck the median.

During the trial GM introduced the seat from the automobile which Plaintiff was driving and its use was demonstrated before the jury; an expert for the Defendant company testified that in his opinion the seat was not defective and explained why. The defendant company also intro-

duced evidence of five witnesses—two policemen, a fireman, an ambulance driver, and a wrecker operator—that within a short time of the accident there was "a strong odor of alcohol" in the Plaintiff's car, about her person, and in the closed ambulance. Plaintiff admitted she had drunk two beers about 5:30 p.m., a vodka and tonic about 8:30 p.m. and another vodka and tonic about 1:00 a.m., prior to the accident.

Plaintiff's pleadings contain no allegation as to negligence of GM as such; she alleged that her injuries were proximately caused by the defective seat adjustment present in the automobile in question. She further alleged the automobile was being used for the purpose for which it was intended and that a breach of implied warranty of fitness on GM's part was the direct and proximate cause of her injuries.

By way of answer, GM filed general and specific denial of liability and raised the affirmative defenses of Plaintiff's contributory negligence in several particulars, including driving while intoxicated and excessive speed at the time of the accident, and that Plaintiff was guilty of assumption of risk by her misuse of the product.

Plaintiff's reply denied any and all negligence on her part, further denied that she was driving while intoxicated, or at an excessive speed.

Trial proceeded and the jury returned Defendant's verdict.

We deal with products liability and in Marathon Battery Company v. Kilpatrick, Okl., 418 P.2d 900 (1965), have taken the next to the last step in adopting a strict liability theory for products other than food and drink, broadening even more the traditional approaches of negligence and warranty recovery.[1]

Judge Murrah, then Chief Judge of the Tenth Federal Circuit, in Schenfeld v. Norton Company, 391 F.2d 420 (10th Cir., 1968), capsulized the development of the theory of strict liability as follows:

"Before considering the propriety of the trial judge's dismissal of Schenfeld's implied warranty claim, it seems appropriate to quickly review the development and present status of the various potential recovery routes open to a claimant injured by a defective product. One such avenue of redress is, of course, an action for negligence. Since Mac-Pherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, it is no longer doubted that *the supplier of a chattel* negligently made is liable foreseeable harm *to anyone injured,* regardless of privity. See Prosser, The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, 1100–1103 (1960).

Independently of the negligence route, recovery has been traditionally allowed for breach of an *express or implied warranty.* Such a warranty was considered to be a part of the contract between the seller and buyer and thus had its basis in contract law. See Dagley v. Armstrong Rubber Co., 7 Cir., 344 F.2d 245. With the advent of the Uniform Sales Act, now replaced in the vast majority of states by the Uniform Commercial Code,[2] recovery became conditioned upon compliance with its pertinent warranty provisions. USA §§ 12 and 15. Recovery was often precluded, however, by the assertion of certain recognized contractual defenses such as lack of privity or the existence of a disclaimer. See Annot., 75 A.L.R.2d 39, 47–54. *In response to a felt need, many courts circumvented these defenses by using theo-*

---

1. At least one state, Alaska, in Clary v. Fifth Avenue Chrysler Center Inc., 454 P.2d 244 (1969), has remarked that we have committed ourselves to the California approach, Greenman v. Yuba Power Products, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963).

2. 12A O.S.1971 2–725, an action for breach of any contract for sale must be commenced within five years after cause of action has accrued.

ries of fictitious agency or third party beneficiary. *The theory which has become more or less agreed upon in later years is that of a "warranty" running with the goods or made directly to the consumer on the basis of public policy.* The net effect of these cases was to impose on the manufacturer strict liability, i.e., liability in the absence of either negligence or privity. This strict liability was first imposed in breach of warranty cases involving food and drink, and was gradually extended to include articles for intimate bodily use. See Graham v. Bottenfields, Inc., 176 Kan. 68, 269 P.2d 413. Finally, in the leading case of Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960), the Supreme Court of New Jersey extended strict liability to cover the sale of any defective product which may be expected to cause harm to the consumer. The floodgates were thus opened, and a surge of cases soon followed the New Jersey court's lead.

The next step was to shed the warranty guise under which strict liability had been traditionally imposed and give it an honest label. *This task was undertaken in 1963 by the California Supreme Court* in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049. With characteristic clarity and succinctness, *Justice, now Chief Justice, Traynor imposed strict liability in the name of "tort":* 'Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law * * *, and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products * * * make clear that the liability is

not one governed by the law of contract warranties but by the law of strict liability in tort.' 27 Cal.Rptr. at 701, 377 P.2d at 901.

*The impact of the Greenman decision was immediate, and other courts quickly added their approval.* The American Law Institute has confirmed the transition in nomenclature in its Restatement of Torts (Second), § 402A:

'(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his products, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.' Restatement at 347, 348.

Comment m to the Restatement makes it clear that the liability stated in § 402A is strict liability based upon tort rather than warranty; that warranty has become so identified in practice with a contract of sale that the warranty theory has become something of an obstacle to the recognition of strict liability where there is no such contract; and that the rule stated in the section is not governed by the provisions of the Uniform Commercial Code, as to warranties. See Restatement of Torts (Second), § 402A p. 355–356." (Emphasis added.)

■ The growth of products liability in Oklahoma may be traced. In Crane Co. v. Sears, 168 Okl. 603, 35 P.2d 916 (1934), we chose to follow MacPherson v. Buick Motor Co.,[3] 217 N.Y. 382, 111 N.E. 1050, L.

---

3. Previously in Ford Motor Co. v. Livesay, 61 Okl. 231, 160 P. 901 (1916) we had held an auto was not inherently dangerous, follow-

ing Cadillac Motor Car Co. v. Johnson, 221 F. 801, L.R.A.1915E 287, Ann.Cas.1917E, 581 (2nd Cir., 1915).

R.A.1916F, 696, Ann.Cas.1916C, 440 (1916) and Justice Cardozo:

> "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is a thing of danger."

*Crane*, decided in 1934, allowed a recovery from a plumbing manufacturer who had furnished a defective mechanism (flange) which upon use burst, causing death to the Plaintiff. The manufacturer answered alleging, among other defenses, contributory negligence, lack of privity, assumption of risk, etc. *Crane* has been cited with approval in such cases as Champlin v. Oklahoma Furniture Manufacturing Co., 269 F.2d 918 (10th Cir., 1959); Gosnell v. Zink, Okl., 325 P.2d 965 (1958); and Royse v. Stine, Okl., 473 P.2d 923 (1970). All of these were decided upon the theory of negligence, with the exception of Champlin, which was decided on a procedural question, and in all cases the common law defenses of contributory negligence and the assumption of risk were pleaded. Warranty, expressed or implied, played no part whatsoever in these decisions. Since *Crane* has not been overruled or restricted, we conclude that an injured Plaintiff has a right to pitch his theory of recovery upon the time-honored doctrines of negligence with its corresponding common law defenses, with little regard to privity.[4]

Another field where liability without privity has grown in Oklahoma as it has elsewhere is with respect to food. Griffin v. Asbury, 196 Okl. 484, 165 P.2d 822 (1945).

Plaintiff in *Griffin* was forced to an election of remedies between negligence and implied warranty, and she chose implied warranty; but we did not say that implied warranty was her only cause of action. We quoted approvingly from the Supreme Court of Tennessee in Boyd v. Coca-Cola Bottling Works, 132 Tenn. 23, 177 S.W. 80 (1915):

> "upon whatever ground the liability of such a manufacturer to the ultimate consumer is placed, the result is eminently satisfactory, conducive to the public welfare and one which we approve."

Also cited in *Griffin* and approving the theory of negligence and to the same effect, is Davis v. Van Camp Packing Co., 189 Iowa 775, 176 N.W. 382, 17 A.L.R. 649 (1920). Later in 1950 in Southwest Ice & Dairy Products Co. v. Faulkenberry, 203 Okl. 279, 220 P.2d 257, recovery was allowed under the theory of negligence calling upon res ipsa loquitur in allowing recovery although again indicating that an implied warranty theory of recovery was available to the Plaintiff.

We turn to warranty.[5]

According to Prosser,[6] Washington,[7] Kansas,[8] and Mississippi[9] commenced the trend to warranty while still paying lip service to the doctrine of privity, but

4. Jamison v. Reda Pump Co., 190 Okl. 593, 126 P.2d 71 (broken electric switchbox); Auten v. Livingston, 201 Okl. 467, 207 P.2d 256 (allegedly defective vulcanizing machine); McAlester Coca-Cola Bottling Company v. Lynch, Okl., 280 P.2d 466 (exploding soft drink bottle); Bower v. Corbell, Okl., 408 P. 2d 307 (defective power saw); Barnhart v. Freeman Equipment Co., Okl., 441 P.2d 993 (defective tie rod assembly on vehicle).

5. Recovery sought or allowed on theory of implied warranty of fitness in the following cases: Oklahoma Coca-Cola Bottling Co. v. Dillard, 208 Okl. 126, 253 P.2d 847 (impurity in soft drink bottle); Ada Coca-Cola Bottling v. Asbury, 206 Okl. 269, 242 P.2d 417 (impurity in soft drink bottle); Cook v. Safeway Stores Incorporated, Okl., 330 P.2d 375 (unfit food); John A. Brown Company, Inc., v. Shelton, Okl., 391 P.2d 259 (damaging hair spray); Jackson v. Cushing Coca-Cola Bottling Company, Okl., 445 P.2d 797 (impurity in soft drink bottle); Thompson v. Trane, Okl., 500 P.2d 1329 (defective furnace).

6. The Assault upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099, at 1106.

7. Mazetti v. Armour & Co., 75 Wash. 622, 135 P. 633, 48 L.R.A.N.S., 213, Ann.Cas.1915C, 140, cited in Southwest Ice & Dairy Products Co. v. Faulkenberry, supra.

8. Parks v. G. C. C. Yost Pie Co., 93 Kan. 334, 144 P. 202, L.R.A.1915C, 179, cited in Griffin v. Asbury, supra.

9. Jackson Coca-Cola Bottling Co. v. Chapman, 106 Miss. 864, 64 So. 791 (1914).

granting exceptions to foods that are noxious, dangerous, where manufacturer practices fraud or deceit, or is negligent in manufacture. Oklahoma followed hesitatingly with Wood & Co. v. Val Blatz Brewing Co., 112 Okl. 119, 240 P. 115 (1925) which is not an injury case but one concerning sales and then in Griffin v. Asbury, supra, and *Southwest Ice & Dairy Products Co.,* supra, the implied warranty theory as to food was approved. From human food to animal food to cosmetics to cigarettes and finally to agricultural compounds, appliances and automobiles, the trend continues. Finally, Oklahoma arrived at Marathon Battery Co. v. Kilpatrick, supra. Although, as stated before in footnote 1 at least one state believes we have adopted strict liability; We do not believe that we have. True, *Marathon* cites Greenman v. Yuba Power Products, 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963), which Judge Murrah says has "shed the warranty guise * * * and given it an honest label", headnotes 3, 4 and 2:

"Rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot be invoked to govern manufacturer's liability to those injured by their defective products unless those rules also serve the purposes for which such liability is imposed.

\* \* \* \* \* \*

To establish the manufacturer's liability for defective power tool, it is sufficient that Plaintiff prove that he was injured while using tool in a way it was intended to be used as a result of a defect in design and manufacture of which Plaintiff was not aware that made the tool unsafe for its intended use, and Plaintiff is not required to establish an express warranty.

\* \* \* \* \* \*

A manufacturer is strictly liable in tort when an article he places on the market, knowing it is to be used without inspec-

tion for defects, proves to have a defect which causes injury to a human being."

But *Marathon* still relies upon warranty:

"Buyer's purchase of an article at random from a trade stock of identical items offered for sale at retail is not such a selection as voids the buyer's right to rely upon skill and judgment of seller or destroys implied warranty of fitness.

\* \* \* \* \* \*

Because warranty is implied either in fact or in law, no express representations or agreements by manufacturers are required, and recovery upon implied warranty is based upon fact that product has been transferred from manufacturer's possession while in a defective state and as a result of such defect the product causes personal injury."

When we spoke approvingly in *Marathon* of Stoer v. Griesedieck Western Brewery Co., 200 Okl. 302, 193 P.2d 575 (1948), and said "the decision was based primarily upon failure of the evidence to show negligence of the Defendant, and in absence of such negligence Plaintiff was not entitled to recovery for breach of implied warranty," we were far wide of the mark, for neither depends on the other and they were available remedies and theories of recovery not cause and effect.

The clear logic of Henningsen v. Bloomfield Motors, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960) should prevail in Oklahoma:

"The burden of losses consequent upon use of defective articles is borne by those who are in a position to either control the danger or make an equitable distribution of the losses when they do occur . . . . Accordingly, we hold that under modern marketing conditions, when a manufacturer puts a new automobile in the stream of trade and promotes its purchase by the public, an implied warranty that it is reasonably suitable for use as such accompanies it into the hands of the ultimate purchaser. Absence of agency between the manufac-

turer and the dealer who makes the ultimate sale is immaterial.

\* \* \* \* \* \*

We see no rational doctrinal basis for differentiating between a fly in a bottle of beverage and a defective automobile. The unwholesome beverage may bring illness to one person; the defective car, with its great potentiality for harm to the driver, occupants, and others, demands even less adherence to the narrow barrier of privity."

It was Justice Traynor, who two years later gave this doctrine a label, "Strict Liability in Tort", Greenman v. Yuba, supra; this theory or remedy we would adopt for Oklahoma, but would prefer to call it "Manufacturers' Products Liability", recognizing its origin in tort principles and its background of implied warranty liability and by so doing attempting to avoid the semantic confusion of and relationship of tort to common law negligence. We would include in the definition of manufacturer —processors, assemblers, and all other persons who are similarly situated in processing and distribution.

In order to avoid costly and multiplicious litigation, which is well illustrated by Williams v. Ford Motor Company, Mo.App., 411 S.W.2d 443 (1967) and Williams v. Ford Motor Company, Mo.App., 454 S.W. 2d 611 (1970); a case twice dealing with the pitfalls of negligence, warranties, and strict liability, and presumably still resting somewhere in the trial courts of Missouri for a third trial; we turn to some of the practical applications raised by the adoption of strict liability in the areas of limitations, defenses, election of remedies, parties, proofs, etc. We recognize that in these areas we embark on judicial innovation and prospective overruling sometimes the source of critisicm as dicta. Professor Leflar [10] points out the vice of such a narrow approach in "Sources of Judge-Made Law", 24 Oklahoma Law Review 319, at page 327, et seq.:

"We certainly cannot assert that the common law as announced by the courts is a body of rules that always keeps nicely abreast of the needs of society . . . Mr. Justice Holmes emphasized the slow and cumbersome character of the case-by-case approach of the common law method when he observed that it does no more than carry us from tuft to tuft across the morass.

The need for change must be felt before the change occurs . . . . The technique of deciding the narrow issue only, so that the *ratio decidendi* can be isolated from its supporting reasons and the case thereafter cited only for the precise point decided by it, is a principal barrier to intelligently planned progress in the common law."

As examples of such judicial innovation, Leflar reminds us that much of the modern law of insurance, corporations, trusts, oil and gas, aviation, and conflicts of law has been created by the courts from needs generated by society and accepted as a part of the common law "whose time has come." Gulf Oil Co. v. Woodson, 505 P.2d 484 (Okl.1973) and Simpson, et al. v. Woodson, 508 P.2d 1069 (Okl.1973) are the most recent examples of prospective overruling by this Court.

■ We are persuaded that the limitation period to be applied in products liability actions is two (2) years, 12 O.S.1971 § 95 "Third", for we recognize the tortious origin and nature of the single cause of action, Williams v. Ford Motor Company, Mo.App., 454 S.W.2d 611 (1970). The essential nature of an action based upon products liability is an action for injury to personal property or for injury to the rights of another. The action thus being primarily tortious in nature must be governed by 12 O.S.1971 § 95 "Third", and, as other such causes of action in tort, limitations should begin to run from the date of injury. We are not unmindful of the limitation and requirement in 12A O.S.1971, 2–

10. Professor, University of Arkansas: Director of Appellate Judge's Seminar, New York University.

318, 12A O.S.1971 2–607(3), and 12A O.S. 1971 2–725, but the reason for their non-application in strict liability situations is stated in 2 Restatement of the Law, Torts 2d § 402A, comment m:

> "The rule stated in this Section is not governed by the provisions of the Uniform Sales Act, or those of the Uniform Commercial Code, as to warranties; and it is not affected by limitations on the scope and content of warranties, or by limitation to "buyer" and "seller" in those statutes. Nor is the consumer required to give notice to the seller of his injury within a reasonable time after it occurs, as is provided by the Uniform Act. The consumer's cause of action does not depend upon the validity of his contract with the person from whom he acquires the product, and it is not affected by any disclaimer or other agreement, whether it be between the seller and his immediate buyer or attached to and accompanying the product into the consumer's hands. In short, "warranty" must be given a new and different meaning if it is used in connection with this Section. It is much simpler to regard the liability here stated as merely one of strict liability in tort."

Turning again to *Greenman:*

> " . . . Rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot be invoked to govern manufacturer's liability to those injured by their defective products unless those rules also serve the purposes for which such liability is imposed."

See also Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minnesota Law Review 791 (1966) at page 829 as to notice to the Seller, page 831 as to Disclaimers, and page 834 as to Express Representations.

By adopting manufacturers' products liability doctrines and principles for Oklahoma we acknowledge the usefulness of all warranty theories, express or implied, and we also have noted the contribution made by negligence doctrines to strict liability situations. We hold that it is no longer necessary to rely upon theories of negligence or any form of warranty for recovery. The rationale for such a rule is founded upon public interest in human safety or as stated in the concurring opinion in Escola v. Coca-Cola Bottling Co., 24 Cal.2d 453, 150 P.2d 436 (1944):

> "It is to the public interest to discourage the marketing of products having defects that are a menace to the public. If such products nevertheless find their way into the market it is to the public interest to place the responsibility for whatever injury that may occur upon the manufacturer, who, even if he is not negligent in the manufacture of the product, is responsible for its reaching the market. However intermittently such injuries may occur and however haphazardly they may strike, the risk of their occurrence is a constant risk and a general one. Against such a risk there should be general and constant protection, and the manufacturer is best situated to provide such protection."

While concerning ourselves with limitations and their application, we mentioned § 402A of the Restatement of Torts, Second Series. We turn again to this section [11] and its application to proof; we would adopt the standard of proof for Oklahoma set forth by the Restatement Second § 402A comment g and define "unreasonably dangerous" as follows:

> "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary

[11]. § 402A Special Liability of Seller of Product for Physical Harm to User or Consumer: (1) One who sells any product in a defective condition *unreasonably* dangerous to the user or consumer or to his property is subject to liability for physical harm. * * * (emphasis added)

knowledge common to the community as to its characteristics."

We specifically disapprove of the standard of proof adopted by Cronin v. J. B. E. Olson Corporation, 8 Cal.3d 121, 104 Cal. Rptr. 433, 501 P.2d 1153 (1972).

██ By our adoption of manufacturers' products liability with its comparison to liability without fault in such areas as workmen's compensation, respondeat superior, the vicious or fractious animal, etc., we do not infer that the injury is of itself proof of the defect, or that proof of injury shifts the burden to the Defendant. In Lyons v. Valley View Hospital, Okl., 341 P.2d 261 (1959), we said:

"Cases are legion in which we have held that the mere happening of an accident raises no presumption of negligence on the part of the defendant."

Nor does it raise any presumption of defectiveness in the article involved in an accident.

*First* of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.

*Secondly,* Plaintiff must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. Thompson v. Trane Co., Okl., 500 P.2d 1329 (1972). If the action is against the retailer or supplier of the article, then the Plaintiff must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.

*Thirdly,* Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property as the term "unreasonably dangerous" is above defined.

██ *Proper* expert opinion of the defect and its existence at time of injury may suffice, but expert opinion should not evade the factual determination of the proofs (First, Second and Third above) to be borne by the Plaintiff. This Court has held expert opinion to the ultimate fact in issue usually is inadmissible.[12]

Dean Prosser[13] states examples of the application of the liability, thus:

". . . Plaintiff must prove . . . that he was injured because the product was defective, or otherwise unsafe for his use. The fact that a plane has crashed does not establish that it is defective until the possibility of negligent flying has been eliminated. Hurley v. Beech Aircraft Corp., 355 F.2d 517 (7th Cir. 1966). An oxygen tank is not shown to be defective merely because an explosion has occurred in a regulator which Plaintiff has attached to it. Delta Oxygen Co. vs. Scott, 383 S.W.2d 885 (Ark.) 1964; and an unusual method of opening a bottle may prevent any conclusion that there was anything wrong with it. Gardner vs. Coca-Cola Bottling Co., 127 N.W.2d 557 (Minn.) 1964. And, the bare fact that the Plaintiff became ill after exposure to Defendant's insecticide does not prove that it was unreasonably dangerous to human beings, Scientific Supply Co. vs. Zelinger, 341 P.2d 897 (Colo.) 1959; Williams vs. Coca-Cola Bottling Co., 285 S.W.2d 53 (Missouri Ct.App.1955) . . ."

██ The practicing lawyer identified with the Plaintiff will seldom be able to produce actual or absolute proof of the defect so necessary in manufacturers' products liability since this information in the final analysis is usually within the peculiar possession of the Defendant. Carefully prepared interrogatories or depositions may be helpful to a Plaintiff, but more than likely Plaintiff may be forced to rely on circumstances and *proper* inferences drawn therefrom in making his proof. We note

12. Barger v. Mizel, Okl., 424 P.2d 41 (1967); Johns v. Safeway Stores, Incorporated, Okl., 463 P.2d 701 (1969); Oklahoma Wheat Pool Terminal Corporation v. Rodgers, 180 Okl. 623, 70 P.2d 1080 (1937).

13. Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minnesota Law Review 791 at 840.

that in some accidents the surrounding circumstances and human experience should make Plaintiff's burden less arduous; he may be able to sustain his burden, but more than likely if the Defendant is a manufacturer or assembler of some highly complex product such as an automobile, human experience will play little or no part in reducing his burden, and he will be relying upon the inference drawn from circumstantial evidence.

Chickasha Cotton Oil Company v. Hancock, Okl., 306 P.2d 330 (1957), is a case in point, for it deals with circumstantial evidence; not only does it allow recovery against a manufacturer or processor, but in essence it is a products case although the issue of warranty seems not to have been raised, probably because it deals with animal food and as we have seen before, these cases were an early exception to the requirements of warranty and negligence. In *Chickasha* the basis of Plaintiff's award was the "defect", grease poisoning, found in a prepared feed, and we held:

> "In civil cases, facts may be proved by direct or circumstantial evidence, or a combination of both, and it is not necessary that such proof rise to such degree of certainty as to support only one reasonable conclusion and exclude all others."

In Jack Cooper Transport Company v. Griffin, Okl., 356 P.2d 748 (1959), a fire case; McCasland v. Burton, Okl., 292 P.2d 396 (1956), a salt water poisoning of cattle case; Otis Elevator Company v. Melott, Okl., 281 P.2d 408 (1954); Greenland v. Gilliam, 206 Okl. 305, 241 P.2d 384 (1952); Berg v. Bryant, Okl., 305 P.2d 517 (1956); and most recently in Sisler v. Jackson, Okl., 460 P.2d 903 (1969), we have allowed proof of negligence by circumstantial evidence. Most of these cases are personal injury cases, but some, as noted, are almost product liability. Dean Keeton[14] in speaking of such evidence says it is "but another way of saying that the circumstances must point an accusing finger at

the Defendant . . .." See also 20 Am.Jur.2d Evidence §§ 4 and 1091 and their annotations.

Examination of the burden on the plaintiff reveals it to be a large and heavy one. Nor do we mean to say, by speaking of the burden of proof assigned to the plaintiff, that he is relieved from proof of causation, as that term is used and understood in the law of negligence, for he must prove that his injury has been caused not necessarily by the negligence of the Defendant but by reason of a defect "built in" and existing at the time of injury.

 We do not say that the Defendant has no defenses; we will deal with them later. At this point suffice it to say Defendant's due care and quality control may be but rebuttal evidence to Plaintiff's inferred conclusions attempted or established by circumstantial evidence.

Since we adopt the theory of manufacturers' products liability, we should further define this theory to eliminate the fictions and adaptations that have developed in connection with products liability evolution. In a great many American jurisdictions, a Plaintiff may seek relief in products liability actions by using the theories of negligence, breach of warranty or strict liability in tort, 63 Am.Jur.2d Products Liability, § 4 and § 206, et seq.

 The guise of warranty was effectively disposed of in Greenman v. Yuba Power Products, Inc., supra, by defining the theory of strict liability therein adopted as being founded in tort rather than contract, grounded in the policy of protection of the consumer. In this opinion, we have pointed out why this Court should distinguish the liability of the manufacturer for a defective product from any liability that is contractual in nature, and support that distinction by quoting a portion of the Restatement of the Law, Torts 2nd, § 402A, comment m, and arguments put forth by the California court in the *Greenman* case, supra. Thus we conclude, notwithstanding

---

14. Dean of the University of Texas, School of Law, 49 Va.Law Review, page 682.

the interpretation placed on the *Marathon* case, supra, and prior authorities of this jurisdiction (see footnote 5) that *breach of implied warranty* is no longer an appropriate remedy for recovery in products liability actions except as provided in the Uniform Commercial Code. See also Moss v. Polyco, Inc., 45 OBJ ——, together with the citations and arguments therein contained.

■■■■ Although the theory of manu-facturers' products liability herein enbraced would not repudiate or be so repugnant to a cause of action for a defective product based on negligence as to necessitate an election of remedies, Sisler v. Jackson, supra, we believe that a defect, if shown as above described, would also include a defect caused by some form of negligence. The negligence action for products liability may thus be rendered unnecessary. In so holding, we are laying the groundwork for the elimination of troublesome and unrealistic defenses often raised in products liability actions based on negligence theory and for the erection of defenses which have a more realistic relation to the cause of action for manufacturers' products liability described in this opinion. The Restatement of the Law, Torts 2nd, § 402A, comment m, states that the strict liability stated therein is more in the nature of common law strict liability for possessors of dangerous animals or conduct of ultra-hazardous activities, and does not rest on negligence. It is, therefore, strict in the sense that negligence is not a necessary element for recovery. Thus, traditional negligence concepts should not, and do not, apply. The Missouri court in the first *Williams* case cited above, Mo., 411 S.W.2d 443, stated that "The defendants' liability for a defective product can no longer be measured by the principles of negligence . . . ." See also Bachner v. Pearson, Alaska, 479 P.2d 319 (beginning at 328) referring to Prosser on Torts, 3rd ed., beginning at page 538.

■■■■ Although the manufacturers' products liability for injuries caused by defec-tive products described in this opinion is neither grounded in negligence or breach of implied warranty, responsibility for the defect must still be traced to the proper Defendant. Where the product is of sophisticated design and construction, or if the product reaches the consumer in a sealed container, varying degrees of difficulty are encountered in tracing this responsibility. The fact that the plaintiff may not be able to ascertain whether the manufacturer or some other party who handled the product before it reached the ultimate consumer is responsible is a good reason for naming all of them as parties defendant, Nichols v. Nold, 174 Kan. 613, 258 P.2d 317 (1953). Several courts have held that this practice should be adopted, and that the parties defendant should then determine between themselves where the final responsibility lies, Nichols v. Nold, supra (implied warranty action); Loch v. Confair, 372 Pa. 212, 93 A.2d 451 (negligence action); Dement v. Olin-Mathieson Chem. Corp., 282 F.2d 76 (5th Cir. 1960) (manufacturers of combination product); and, Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168 (1965). Prosser, in discussing the preceding cases in regard to parties defendant at 50 Minnesota Law Review, beginning at 845, found these to be essentially policy decisions, requiring the Defendants to determine the question of responsibility among themselves. This procedure is entirely compatible with the methods of proof described above for products liability recovery, and which Defendant is responsible for an alleged defect may be determined in the trial court, as it frequently has been in Oklahoma actions. See Gosnell v. Zink, supra, (manufacturer held liable); Trans-continental Bus System, Inc. v. Simons, Okl., 367 P.2d 160 (1961) (user of product held liable); Bower v. Corbell, Okl., 408 P.2d 307 (1965) (retail seller held liable).

■■■■ The question of what persons are protected from defective products by the doctrine of manufacturers' products liability seems to be settled by those authorities that have adopted or described the doc-

trine. Prosser concludes that "any user or consumer of the product, in the broadest sense of the term, is protected by the strict liability rule." Prosser goes on to cite authority for this conclusion, 50 Minnesota Law Review 791 at 827 et seq. The Restatement of the Law, Torts 2d, § 402A expressly provides that the doctrine is applicable in the case of harm caused to the ultimate user or consumer, and the courts have generally reached the same conclusion, 63 Am.Jur.2d Products Liability § 143. Leading cases such as *Greenman*, supra, have taken the first step to hold the doctrine applicable to the consumer. The later California case of Cronin v. J. B. E. Olson Corporation, supra, further extended the doctrine to an employee of the consumer, much as it has been extended to protect most ultimate users and consumers by the cases cited by Prosser. Other recent decisions have found the doctrine should also be applied for the protection of injured bystanders, Elmore v. American Motors Corporation, 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, and Caruth v. Marianai, 11 Ariz. App. 188, 463 P.2d 83. The full extent of the protection afforded by the doctrine of manufacturers' products liability will be decided when this Court is presented appropriate fact situations.

Oklahoma authorities basing products liability on theories of negligence or implied warranty have extended liability of manufacturers of defective products to various consumers and third parties (see footnotes 4 and 5, ante), and in the *Marathon* case, supra, the Oklahoma court seems to extend liability for latent defects to any person using the product for its intended purpose. The theory of manufacturers' products liability adopted in this opinion retains the broad protection from defective products previously adopted by this Court, and adheres to the preponderance of national authority in following the rule of the Restatement Second § 402A

that extends the liability for a defective product to the ultimate user or consumer.

■ This is not to declare manufacturers and suppliers of defective products absolute insurers of all users and consumers whom they serve. As noted above in discussing proofs, causation of the injury by the defective product beyond a mere possibility must be shown. If some act of the plaintiff *caused* the injury, rather than the defective product itself, causation is missing, and the plaintiff may not recover; e. g., the intoxication of the Plaintiff in the instant case. Although the act of the Plaintiff that did in fact cause the injury might have been negligent, it seems wise to avoid the semantic confusion of calling it contributory negligence, especially since the action itself is not based on negligence. It seems better to lump this defense in with the general causation requirement.

■ A second defense, well established in negligence cases, and applicable to manufacturers' products liability is the defense of abnormal use. If the plaintiff is using the product for some purpose for which it was not intended and is consequently injured, he should not recover. Although this, too, might go toward denial of causation, it might as a matter of proof be an affirmative matter. See Prosser, 50 Minnesota Law Review at 824.

■ Complicated semantic difficulties arise when the defense of assumption of risk is considered.[15] In order to avoid abuse of this legitimate defense, or confusion of same with its common law counterpart of the same name, it should be narrowly defined as *voluntary assumption of the risk of a known defect*. This has been otherwise referred to as contributory fault, Williams v. Ford Motor Company, Mo. App., 454 S.W.2d 611, and discussed in terms of contributory negligence, comment n, § 402A, Restatement of the Law, Torts, Second, for the " . . . defense which

---

15. See Williams v. Brown Mfg. Co., 45 Ill.2d 418, 261 N.E.2d 305 (1970) for a case differentiating between defenses of contributory negligence, misuse, assumption of risk and dealing with the Statute of Limitations.

consists of voluntary and unreasonably encountering a known danger . . . will, in general, relieve the defendant of strict liability." Prosser, The Law of Torts, 3rd Ed., § 78.

■ The recent enactment of the comparative negligence statutes by the Oklahoma Legislature, 23 O.S.1973 § 11 and § 12, has no application to manufacturers' products liability, for its application is specifically limited to *negligence actions.* We have stated that manufacturers' products liability is not negligence, nor is it to be treated as a negligence action, but a new theory of recovery. Likewise, we have dealt elsewhere herein with pleas of contributory negligence and assumption of risk and their application to negligence actions only, and not to manufacturers' products liability.

Applying the argument and logic as heretofore developed in this opinion to the facts in this case leads us to the following conclusions:

■ Giving the time-honored instructions of contributory negligence and assumption of risk as heretofore known in negligence and implied warranty cases (numbers 3 and 8) was error—but error of a harmless nature—for the issues were whether the product was defective and whether the Plaintiff misused the product (use of product while intoxicated). Missouri-Kansas-Texas RR Co. v. Harper, 468 P.2d 1014 (Okl.1970) holds:

"Judgment will not be disturbed because of allegedly erroneous instructions, unless it appears reasonably certain that the jury was misled thereby . . .

Salient test of reversible error in instructions is whether jury was misled to the extent of rendering a different verdict than it would have rendered, if alleged errors had not occurred."

See Sun-Ray DX Oil Co. v. Brown, 477 P.2d 67 (Okl.1970); Missouri-Kansas-Tex-

as RR Co. v. Hayes, 445 P.2d 254 (Okl. 1968).

Review of the evidence, including that of Plaintiff herself, indicates she was drinking as she put it "vodka and tonic" on the night in question. A strong odor of liquor was noticed by five disinterested witnesses about the wrecked auto and in the ambulance some time after the accident. This convinces us of an abnormal use or misuse of the product and is a complete defense to strict liability theory—the Defendant's verdict was inevitable and the erroneous instructions, numbers 3 and 8, could not have misled the jury.

Statutory law in Oklahoma covering harmless error is to the same effect. 22 O.S.1961 § 1068, in effect at the time of this incident, stated that no judgment should be set aside in any civil case by an appellate court after examination of the entire record, including instructions to the jury, unless it appears that error has been committed which has probably resulted in a miscarriage of justice.[16] The entire record in the case under consideration reveals no indication of a miscarriage of justice—exactly the contrary appears. Early Oklahoma cases have held:

"Error, if any, in the giving or refusal of instructions, is not prejudicial, where on the whole case the verdict and judgment are right;

Shawnee Nat. Bank vs. Wootten & Potts, [24 Okl. 425] 103 P. 714; Mitchell vs. Altus State Bank, [32 Okl. 628] 122 P. 666; Horton vs. Early, [39 Okl. 99] 134 P. 346 [436] 47 L.R.A.,N.S., 314, Ann. Cas.1915D, 825; Whitcomb vs. Oller, [41 Okl. 331] 137 P. 709; Oklahoma City Const. Co. vs. Peppard [43 Okl. 121] 140 P. 1084; Gillis vs. First Nat. Bank, [47 Okl. 411] 148 P. 994; Anderson vs. Guymon, [51 Okl. 233] 151 P. 863; Dunn vs. Modern Foundry & Machine Co., [51 Okl. 465] 151 P. 893; Muskogee Electric

---

16. See also the new statute, 20 O.S.1971 § 3001 amending and renumbering 22 O.S. 1961 § 1068, and 12 O.S.1971 § 78, as to harmless error.

Traction Co. vs. Cox, [49 Okl. 365] 153 P. 125."

We hold that under the peculiar facts and circumstances of the instant case the giving of the contributory negligence and assumption of risk instructions, numbers 3 and 8, did not result in a miscarriage of justice, but was harmless error. This conclusion, we note in passing, is limited to a peculiar fact situation and has limited or no application to the usual products case where the proper instructions should be directed to causation and/or strict liability defenses of (a) misuse or abnormal use of the products, and (b) voluntary assumption of a known defect.

■ In her last proposition, plaintiff argues that the trial court erred in refusing to grant a new trial upon the ground of misconduct of a juror. In support of this portion of her motion for a new trial plaintiff attached the affidavit of a bailiff that she observed a juror, during a recess, talking with one of defendant's witnesses.

At the hearing on the motion for new trial this juror was produced as a witness and testified that he overheard defendant's witness (a mechanic) and another man talking about how to get more gas mileage out of a particular kind of automobile. Since he had the same kind of automobile, he was interested and listened to the conversation. There was no evidence that they discussed the case being tried, and no evidence of any discussion of "any subject of the trial"; see 12 O.S.1971, § 581. The record shows that the other two men involved were present and available to testify at the hearing on motion for new trial, but they were not called to do so by either plaintiff or defendant. This is very different from the situation described in Barnhart v. International Harvester Co., Okl., 441 P.2d 1000, cited by plaintiff.

■ Because of the obvious impact of this decision and its effect on basic concepts of law, procedures and rules in Oklahoma, we specifically hold that the law hereby established will be applied prospectively to all cases for trial from and after the date the mandate issues herein; and may likewise be applied by the appellate

courts in cases which have been tried and are for decision on appeal where it would not prejudice the rights of the litigants.

Judgment affirmed.

BERRY, HODGES, LAVENDER, BARNES and SIMMS, JJ., concur.

DAVISON, C. J., and IRWIN, J., dissent.

WILLIAMS, V. C. J., concurs in result in part and dissents in part.

WILLIAMS, Vice Chief Justice (concurring in result in part and dissenting in part).

Although I am aware of the modern trend toward the doctrine of strict liability in tort and would concur in its adoption in a proper case, I do not believe that this is such a case.

I do not agree with the majority that "The issue for us in this case is the present and future of products liability litigation in Oklahoma." I am unable to find reference to such an issue anywhere in the pleadings, trial proceedings or briefs on appeal.

Plaintiff's petition very clearly stated a cause of action for damages for breach of implied warranty; she alleged that "breach of the implied warranty of fitness as aforesaid by the defendants was the direct and proximate cause of this plaintiff's injuries and damages * * *". After a careful examination of the record before us, I am convinced that both parties tried the case on the theory that the determinative issue of fact was the question of proximate cause. I find persuasive evidence in the record warranting a determination by the jury that the proximate cause was not the failure of an allegedly defective seat back adjustment mechanism, but that the accident and plaintiff's damages were proximately caused by her own conduct in driving while intoxicated. I therefore agree that the judgment of the trial court based upon jury verdict for defendant should be affirmed.

At the conclusion of the evidence, and without objection from plaintiff, the trial

court instructed the jury on the law regarding actions for damages for breach of implied warranty. Plaintiff presented no requested instructions of any kind, and made no general request that the jury be instructed under the doctrine of strict liability in tort, or "manufacturers' products liability."

In her brief on appeal, plaintiff argues five propositions: four of them concern the trial court's use of the phrases "contributory negligence" and "assumption of risk" in a breach of warranty action, and the fifth concerns an allegation of misconduct of a juror. Under the facts and circumstances of this case, I believe these alleged errors at most were harmless. There is no allegation of error which in any way involves the doctrine of strict liability in tort or "manufacturers' products liability".

In summary, neither in the pleadings nor in the trial of the case, nor in the allegations and arguments in the briefs on appeal do I find any issue concerning the doctrine of strict liability in tort "or manufacturers' products liability".

In literally dozens of cases, this Court has announced and followed rules to the effect that a case will not be reviewed on a theory different from that on which it was tried below: that an issue not presented in the trial court and properly preserved will not be considered on appeal; and that this Court will not consider abstract questions. I am aware that there are exceptions to these rules and that, for instance, jurisdictional questions may be raised for the first time on appeal. No jurisdictional question is presented in the case now before us, and I know of no other exception to these rules that is applicable here.

The majority opinion shows that this Court's remarks about the doctrine of strict liability in tort in Marathon Battery Co. v. Kilpatrick, supra, were, in effect, mere dictum, by pointing out that the case was decided under implied warranty principles. It is believed that the comment is applicable to the opinion of the majority in this case. In the opinion in this case which was pleaded, tried and briefed on appeal as an implied warranty case, there appears considerable discussion of the doctrine of strict liability in tort, therein called "manufacturers' products liability", and in the syllabus there are announced twelve points of law not deemed by this writer to be even indirectly applicable to the issues presented in the trial court or argued on appeal. While in *Marathon,* the comments about strict liability in the body of the opinion are properly characterized as dictum, in the instant case much of the majority opinion and the syllabus itself appears to me to be dictum.

I have not yet concluded nor have I determined in my mind this Court can properly conclude that a defendant in a case pitched on the remedy herein created or re-named may lawfully be prohibited from asserting the defenses otherwise available to him under applicable common law principles in a given action absent lawful legislation dispensing with such defenses.

In my view, a proper case in which to adopt the doctrine of strict liability in tort would be one in which plaintiff had at least tried to rely upon that doctrine at the trial court level, even if only alternatively, and the parties had furnished briefs pro and con on the subject. In such a situation, no violence would be done to the basic principle of the separation of the powers of government, because of the broad common law principle that when the reason for a rule changes, the rule changes with it. Under that principle and 12 O.S. 1971, § 2, which provides that the common law " * * * as modified by * * * judicial decisions and the condition and wants of the people * * * shall remain in force in aid of the general Statutes of Oklahoma" this Court could adopt the doctrine of strict liability in tort in a proper case without violating the principle of the separation of the powers of government and without ignoring well settled principles of appellate review.

Except for agreeing with the result (affirmance of judgment for defendant) I respectfully dissent.

IRWIN, Justice (dissenting).

The majority opinion states that "the issue for us in this case is the present and the future of products liability litigation in Oklahoma", and discusses in detail the practical applications raised by the adoption of strict liability in the areas of limitation, defenses, parties, proofs, etc.

In my opinion, decisional law concerning manufacturers' products liability would be better developed by resolving issues presented in each particular case and we should not determine in this case issues neither presented nor necessary to decide. My opinion is in harmony with Edwards v. Hanna Lumber Company, Okl., 415 P.2d 980; Eberle v. State ex rel. Department of Highways, Okl., 385 P.2d 868; In Re Fletcher's Estate, Okl., 308 P.2d 304; and cases of similar import which, in effect, support the proposition that this Court on appeal will not determine abstract questions of law.

I agree that the judgment of the trial court should be affirmed but I would affirm such judgment under our present decisional law.

I respectfully dissent.

I am authorized to state that Chief Justice DAVISON concurs in the views herein expressed.