**Ed STRICKLAND, Appellant,**

v.

**The COCA COLA COMPANY, a corporation, Appellee.**

**No. 46359.**

Court of Appeals of Oklahoma, Division No. 2.

Aug. 6, 1974.

Rehearing Denied Oct. 4, 1974.

Certiorari Denied May 13, 1975.

Released for Publication by Order of Court of Appeals May 15, 1975.

Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, for appellant.

Foliart, Mills & Niemeyer, Oklahoma City, for appellee.

BRIGHTMIRE, Presiding Judge.

Seeking the "pause that refreshes" plaintiff experienced instead one that was repulsive—maggots in a bottle of quaffed Coca Cola. Discovery of the unwelcome vermins made him vomit and remain very ill for a prolonged period of time. He sued both the bottler and its syrup supplier, The Coca Cola Company, asking for conse-

quential damages. After the cause reached issue the Coca Cola Company moved for a summary judgment. The trial court sustained it and entered judgment for that defendant. Plaintiff appeals contending the ruling is against the law.

While car riding around McCurtain county with a friend plaintiff decided he needed "the real thing." They drove into Wright City and down Main Street stopping in front of a little country store. Plaintiff went in, found a Coke chest, slid the top back, removed a bottle of Coca Cola, and opened it. After paying for the drink, he returned to his car, got in, and his friend started driving off when plaintiff took his first gulp of the bottled beverage.

"I started to take another swallow," said plaintiff, "and I tasted something on my tongue, felt something in my mouth . . . . I spit it out and I saw it was some kind of foreign material. . . . And, then, I held the Coke up and checked it and it had a bunch . . . [of] white maggots in the top of it, floating on the top. . . ." Plaintiff says he became "violently sick at my stomach" and eventually went to the hospital. Untoward psychic effects of the defiled bottled dulcitude continued to impair plaintiff's ability to work and enjoy a normal life-style.

Eventually this suit was commenced against the owner of the Coca Cola trademark and formula—The Coca Cola Company—and against its licensee bottler—Idabel Coca Cola Bottling Company, Inc.

In his petition as amended plaintiff alleged that "On December 17, 1970, he purchased a bottle of Coke manufactured, bottled and distributed by defendants. The Coca Cola Company manufactured a syrup which was sold to the Idabel Coca Cola Bottling Company, Inc., and placed in the bottled product. . . . Defendant, The Coca Cola Company, failed to inspect its syrup and take protective measures to prohibit the entry of maggots into said syrup."

In its answer and an affidavit of one of its vice presidents, the world-renowned pop producer said it "does not bottle, distribute or sell the bottled beverage, Coca Cola, or any bottled soft drink under any name in the United States. . . . [It] does not . . . maintain any bottling plants." But "The Coca Cola Company has," however, "entered into contracts with individual bottlers throughout the United States, granting to such bottlers exclusive rights to bottle Coca Cola in the territories described in their contracts. At all times material to this lawsuit, the exclusive right and authority to bottle, distribute and sell Coca Cola in Oklahoma was vested by appropriate contracts in local bottling companies located in Oklahoma. The Coca Cola Company is the owner of the trademark 'Coca Cola,' and the manufacturer of the syrup from which the finished beverage, Coca Cola, is prepared. . . . [and] it is specifically denied . . . that this defendant provided any . . . component part of the beverage, other than the syrup . . . ." and the syrup contained in the Coke bought by plaintiff was inspected by defendant and contained no deleterious substance. Measures were taken by defendant to prohibit "the entry of maggots into said syrup."

Other "defenses" included a charge that "plaintiff was negligent . . . [which] contributed to the occurrence. . . ." And the maggot infested drink "was an unavoidable accident, casualty and misfortune. . . ."

Defendant's summary judgment motion recited it relied "upon the pleadings and the affidavit of . . . [its vice president]" to support its contention "that there is no substantial controversy over any material fact relating to this defendant's liability for the acts claimed in plaintiff's petition."

Both defendant's demurrer to plaintiff's petition and its motion for summary judgment were overruled.

But then a little later defendant moved the court to reconsider the latter ruling because "the interrogatories filed by this defendant, and the plaintiff's answers thereto, fail to indicate that the plaintiff can prove by any means that the syrup, the only component part of the product manufactured by this defendant, contained any deleterious substance at the time it left this defendant's custody."

The trial court did reconsider, vacated its earlier order, and summarily adjudged the controversy in favor of defendant for this reason—that plaintiff would have no eye witness or other direct evidence that the syrup in question had maggots in it when it left defendant's plant; and that plaintiff can only prove the following which is insufficient:

"(a) The plaintiff would testify that the maggots were in the Coca Cola when he had purchased it;

"(b) The representatives of the defendant, Idabel Coca Cola Bottling Company, Inc., would testify that they did not put the maggots in the Coke.

"Therefore, it is plaintiff's contention that plaintiff can establish that the syrup was deleterious at the time it left the plant of the defendant. The Coca Cola Company, by circumstantial evidence.

. . . . . .

" . . . Motion for Summary Judgment of the defendant, The Coca Cola Company . . . sustained . . . ."

Defendant defends the judgment on the same ground it was rendered—that it is essential that plaintiff show he can prove "the product was defective when it was transferred from the manufacturer's possession" and this the record demonstrates he cannot do. It cites Thompson v. Trane Co., Okl., 500 P.2d 1329 (1972) for general rule that in "order to impose liability for defective product upon manufacturer, the product must have been defective when it was transferred from the manufacturer's possession."

Using this rule as a point of departure defendant says it served an interrogatory on plaintiff asking him to "state the names and addresses of all persons having knowledge of facts to support your contention . . . that the syrup when it left the defendant's factory contained maggots or any other deleterious substance," to which plaintiff answered: "Unknown at this time." This was on May 17, 1972, and the answer prompted defendant to file its motion for summary judgment on May 30, 1972, interpreting the answer to mean plaintiff knew of no way to prove his case against defendant whereas in fact the answer can be construed to mean only that the names of "all persons having knowledge of the facts" are unknown to plaintiff. As a practical matter it is as impossible as it is unnecessary for a party to know of "all persons having knowledge of facts" in order to carry his burden of proof with regard to a wide variety of situations.

So the problem here must turn at some other legal corner. The right one we think consists of a fundamental application of District Court Rule 13. This rule allows a party to move for and obtain a summary judgment when the record shows "there is no substantial controversy as to any material fact." Affidavits may be used but must be made by persons having "personal knowledge" of the facts asserted and must "show that the affiant is competent to testify as to the matters stated therein and . . . [which] set forth facts that would be admissible in evidence." 12 O.S. 1971, Ch. 2 App.

To start with it is clear that the pleadings develop these issues: (1) plaintiff avers he bought a sealed bottle of Coca Cola and after opening and drinking part

of it discovered it contained maggots; and, (2) defendant Coca Cola Company made and supplied the syrup containing maggots to Idabel Bottling Company which in turn mixed it with carbonic acid gas, bottled, and capped it and placed it in the little country store's pop box for sale to the public.

Defendant admits all this except (1) it denies supplying to its bottler syrup containing maggots; (2) it does not know whether the bottle purchased by plaintiff contained maggots as alleged; (3) it does not know whether plaintiff got sick as alleged.

These, then, are the material facts concerning which a substantial controversy exists and which, if resolved in favor of plaintiff, entitles him to recover. Once this is recognized it becomes obvious a summary judgment is a completely inappropriate means of disposing of them. The parties must under our law be given an opportunity to present evidence in support of their respective positions subject to established sufficiency tests. If an issue survives these tests then the factfinders must resolve it.

We hold there exists a substantial controversy as to several material facts. We do not consider it necessary to discuss other arguments about what evidence plaintiff may or may not have or whether its quality is sufficient to satisfy legal requirements. We will mention, however, that since entrance of the summary judgment below the Oklahoma Supreme Court has promulgated an opinion in Kirkland v. General Motors Corp., Okl., 521 P.2d 1353 (1974), which we think contains an adequate answer to the evidentiary questions mentioned.

The summary judgment in favor of The Coca Cola Company is therefore reversed and the cause remanded with directions to proceed according to law.

BACON, and NEPTUNE, JJ., concur.