**MUSTANG FUEL CORP., a corporation, Plaintiff,**

v.

**The YOUNGSTOWN SHEET AND TUBE COMPANY, an Ohio Corporation, Defendant.**

**No. Civ–70–647.**

United States District Court, W. D. Oklahoma.

April 14, 1976.

Joe G. Wolfe and Ed Abel, Lampkin, Wolfe, Burger, Abel, McCaffrey. & Norman, Oklahoma City, Okl., for plaintiff.

Calvin W. Hendrickson, Pierce, Duncan, Couch & Hendrickson, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION AND ORDER

CHANDLER, District Judge.

On this 6th day of April, 1976, the Court having reviewed the entire record, including memorandum briefs submitted by counsel for the respective parties in support of and in opposition to the plaintiff's Motion for New Trial, the Motion for New Trial of the plaintiff, Mustang Fuel Corp., is denied.

By plaintiff's opening statement in its Brief in Support of its Motion for New Trial, there appears a lack of understanding of the Court's Order of November 26, 1975, granting summary judgment to the defendant. The Court's denial of plaintiff's Motion for New Trial is predicated upon the following rationale.

By its decision in *Kirkland v. General Motors Corporation,* 521 P.2d 1353 (Okl. 1974), the Supreme Court of the State of Oklahoma adopted its version of Restatement of Torts (Second), § 402A, denominating it "Manufacturers' products liability." The Oklahoma Supreme Court at page 1362 of the reported opinion, specifically adopted Restatement Second § 402A, comment "g" stating:

> "The article sold must be dangerous to an extent beyond that which would be contemplated by the *ordinary consumer who purchases it,* with the *ordinary knowledge common to the community* as to its characteristics." (Emphasis added)

The instant case, it goes without saying, involves consumers who are not "ordinary" such as the ordinary consumer in the day-to-day marketplace. For this reason, the Court must give special notice to the phrase "ordinary consumer who purchases it." That is, it must view

the Mustang Fuel Corporation as such and not as an ordinary consumer without knowledge of the petroleum industry. The Court notes that the purchase was initiated by the plaintiff through its Chief Engineer, James H. Coulter, who, at the time he established the specifications to which the pipe would be built had had approximately 14 years experience involved with the laying of pipelines and during that time was intimately associated with pipeline systems not only in the employment of Mustang but also with the United States Navy and Sohio Petroleum Company. The purchase order was pursuant to detailed technical specifications of the American Petroleum Institute. Without stating the tests in detail, suffice it to say that order by these specifications is proof that the plaintiff understood in depth the chemical and metallurgical tests that would be performed on the pipe *prior to* delivery. As noted by the United States Court of Appeals for the Tenth Circuit in its decision, *Mustang Fuel Corp. v. Youngstown Sheet and Tube Company,* 516 F.2d 33, at page 38 (10th Cir. 1975), Mustang prescribed the tests to be performed, Mustang knew what tests would be performed, and Mustang even had the right to have its own representative at the defendant's plant to insure that those tests, and presumably other tests it might wish, were in fact performed. This opportunity, as noted in the reported opinion, supra, was not exercised. Now after purchase and delivery of the pipe, after interment of the pipe for several years, after repeated ruptures to the pipe, after the Lemke incident which gave rise to this litigation, indeed after the first hearing of this matter, the plaintiff has produced Dr. Hochman who has performed a microprobe analysis which, according to Dr. Hochman's testimony, shows "certain areas of extremely high increase of sulphur content."

In Dr. Hochman's opinion the localized corrosion suffered was caused in some cases by incomplete fusion and/or high sulphur content acting both in concert. Dr. Hochman does not testify with par-

ticularity which corrosion was so caused on the basis of his preliminary study. Dr. Hochman agreed that the API specifications did not call for a microprobe analysis. In fact, Dr. Hochman's testimony established as undisputed fact that no specifications in the country require the test that he performed.

■ Against this evidentiary and legal background, the Court was called upon to determine if, at the time the defendant moved for summary judgment, there were any actual or inferential facts which, taken in a light most favorable to the plaintiff, would establish a triable issue in this remanded litigation. The Court decided there is not a triable issue herein for the reason that plaintiff has wholly failed in its burden to establish a defect in the pipe, which defect was "unreasonably dangerous" at the time it left the hands of the defendant manufacturer.

In *Sterner Aero AB v. Page Airmotive, Inc.,* 499 F.2d 709, at page 712 (10th Cir. 1974), the United States Court of Appeals, Tenth Circuit, addressed the nature of the § 402A theory, stating:

"This strict liability in tort (§ 402A) is substantially similar to implied warranty stripped of the contract defenses of priority, notice, disclaimer and the other contract attributes."

The defendant has raised by the Third Proposition of its Memorandum Trial Brief the argument that where the plaintiff has failed in its burden of proof to show a product was unmerchantable, then plaintiff has by the same failure not met its burden of proof with respect to proof of an "unreasonable danger." The defendant further argues that *Kirkland* does not serve to lessen the burden of proof as to a defective product. Upon the facts of this case, the Court agrees. If the parties were at a disparate bargaining position, with the purchaser at the disadvantage, this would not necessarily be a sound argument. But following the *Kirkland* definition and viewing the ordinary consumer who would purchase 37 miles of high pressure pipe in the community of the petroleum indus-

try, and the fact that plaintiff ordered by a petroleum industry guide substantiates the treatment of "community" as such, the Court does not feel that any of Dr. Hochman's testimony establishes an unreasonable danger. Rather, the evidence shows that plaintiff knew exactly the nature of the product delivered to it.

Disputed testimony does not necessarily give rise to a triable issue of fact. *Kirkland* itself provides the best guideline in this regard, stating at page 1363 of the reported opinion, supra:

"*Proper* expert opinion of the defect and its existence at time of injury *may* suffice, but expert opinion should not evade the factual determination of the proofs to be borne by the Plaintiff." (Latter emphasis added)

The Court continues by stating that plaintiff's burden of proof may be sustained by direct or circumstantial evidence or a combination of both, but that the burden on the plaintiff "is to be a large and heavy one." *Kirkland, supra,* at page 1364.

The plaintiff has heretofore not brought forth evidence to show that the product was so defective as to be unmerchantable under the cumulative definition of 12A O.S.1971, § 2–314(2)(a-f). Under the burden of proof as established by *Kirkland, supra,* the Court specifically finds that the testimony of Dr. Hochman is not sufficient to sustain this burden of proof. The pipe was not dangerous to an extent beyond that reasonably contemplated by an ordinary purchaser of pipe under the API specification 5LX.

■ Summary judgment lies, however, for additional reasons. The *Kirkland* decision establishes several defenses which bar recovery under the doctrine of manufacturer's products liability as a matter of law. The Court has noted undisputed evidence that the pipe was delivered to the plaintiff, constructed as a pipeline and tested at high pressure without failure before being buried. The Court finds no evidence that would show the defendant knew the pipe would be buried in soil of the so-called "hot soil" condition. Over two years later, ruptures developed. Plaintiff consulted experts, including the defendant, for a remedy. The defendant recommended that the pipe be exposed, scraped, and coated to prevent the electrical attack upon the pipe. The plaintiff rejected the defendant's recommendations and adopted an alternative remedy, that of "cathodic protection." That protection failed. The significant fact is that there was a prolonged period of time from the first failure until the failure that resulted in the Lemke failure. The defects were known, yet the plaintiff continued to use the pipeline for high pressure transmission of natural gas. At the time of the first failure, as thereafter, the plaintiff had unquestioned dominion and control over the pipeline.

*Kirkland,* supra, at page 1366, states that by adoption of § 402A, there was no intention to declare manufacturers and suppliers as absolute insurers. For this reason, the Oklahoma Supreme Court adopted various defenses to include a defense "narrowly defined as *voluntary assumption of the risk of a known defect.*" (Court's emphasis) It is this Court's opinion, from undisputed facts presented to it, that the plaintiff's continued use of the line for transmission of natural gas after prior ruptures rises to a voluntary assumption of the risk of a known defect and is a defense in bar to maintenance of a cause of action under the *Kirkland* theory of recovery.

■ Further, the act of the plaintiff in continuing to transmit gas after a known rupture, and the refusal of the plaintiff to excavate and expose the pipe from the surrounding soil is the act that essentially caused the injury. The testimony is in complete agreement in one regard, that the "hot" soil initiated the attack upon the pipe. The plaintiff offers no reason for its refusal to expose the pipe. Its refusal to expose the pipe allowed the corrosion to progress and caused the injury. Plaintiff's act of knowing *omission* is as much an act causing the injury as an act of *commission* by driving an automobile in a state of intoxication. For the reason that the

Court finds that an act of the plaintiff, albeit an act of omission, caused the injury, the plaintiff is barred as a matter of law from recovery under the *Kirkland* doctrine.

For these reasons the Motion for New Trial is denied:

(1) Plaintiff has failed in its burden of proving an unreasonable danger.

(2) Plaintiff voluntarily assumed the risk of a known defect.

(3) An act of plaintiff caused the injury complained of.