FILED
United States Court of Appeals
Tenth Circuit

August 13, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RENEE M. KORBAN, Personal
Representative of the Estate of Thomas
Shelby Morris, Deceased,

      Plaintiff-Appellant,

v.

BOOSTPOWER U.S.A.,
INCORPORATED,

      Defendant-Appellee.

No. 12-6284
(D.C. No. 5:10-CV-00772-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **HOLLOWAY**, and **BACHARACH**, Circuit Judges.

Plaintiff Renee M. Korban, the personal representative of the Estate of Thomas

Shelby Morris, Deceased, appeals from the grant of summary judgment in favor of

defendant Boostpower U.S.A., Incorporated (Boostpower) in this products liability

suit. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I.

The parties are familiar with the facts and we repeat them only briefly. Mr. Morris received the injuries that ultimately caused his death while a passenger on his friend's high-performance speed boat. Several years after he purchased the boat, Mr. Morris's friend designed and assembled a 542 cubic inch engine to increase the boat's performance. The fuel rails[1] used in the upgrade were manufactured by Boostpower. The owner attached the rails to the base plate with turnbuckle bolts.

On the day of the accident, Mr. Morris, and two friends, including the owner of the speed boat, returned from an overnight boating festival. They disembarked at the boat ramp and promptly boarded the speed boat. Mr. Morris, who had been drinking alcohol, fell onto the engine and dislodged one of the fuel rails. The boat owner, who also had been drinking, proceeded to drive Mr. Morris and the other friend down the river for about one-half mile. When the owner turned the boat around to return to the boat ramp he noticed that one of the fuel rails was leaking gasoline. He turned off the engine and went to investigate. He restarted the engine and observed what he described as "a spray of fuel." Aplt. App. at 130. While the owner held the fuel rail in place, he had the other passenger start the engine. This time there was no leak. The owner testified that he again made way to the ramp:

> [I] accelerate[d] the boat to bring it up on plane. As I was coming up on plane . . . I noticed it started leaking. [I] turned the boat off. I [went] back, and I was like "You got to hold it just like this." [Mr. Morris]

---
[1] Fuel rails deliver gasoline to the fuel injectors.

- 2 -

gets ahold of it, I start[ed] the boat again.  [The fuel rail was] [n]o longer leaking.

*Id.* at 131-32.

After they were more than half way back to the boat ramp, Mr. Morris was heard to say:  "This stuff's getting all over me."  *Id.* 132.  The owner saw that Mr. Morris had "pulled [the fuel rail] away far enough that there is fuel going everywhere.  There is a cloud of fuel."  *Id.*  He put the engine in neutral and turned off the ignition.  "And when I did, is when it – when the fire – it was a fireball immediately."  *Id.*  Mr. Morris was fatally burned.

II.

The theory of the case, which was bolstered by the opinions of the plaintiff's expert witnesses, was that the accident would not have occurred if a security bar had been installed.  As one expert explained:  "Without [a] threaded drilled hole in the end of the fuel rail, it would appear to anyone other than a very sophisticated commercial engine builder who was assembling such [a] fuel rail to the base plate that there was no necessity for a 'security bar' and that the fuel rail would be securely attached to the base plate by what are known as turnbuckle bolts."  *Id.* at 246. Another expert opined that the fuel rails were "defective due to the lack of instructions and/or warnings by Boostpower that such parts should be connected by what is known as a security bar."  *Id.* at 271.  "Under all of the circumstances, it was for[e]seeable to Boostpower who knew a security bar was required, that a hobbyist

- 3 -

such as [the speed boat owner], would not know such a security bar was required for a safe installation of the base plate and fuel rail." *Id*. at 273.

But as the district court explained in its thorough and well-reasoned memorandum and opinion filed October 19, 2012, the fuel rail was misused and thus did not cause the accident. Accordingly, the court granted Boostpower's motion for summary judgment.

### III.

"In diversity cases, the laws of the forum state govern our analysis of the underlying claims, while federal law determines the propriety of the district court's summary judgment." *Morris v. Travelers Indem. Co. of Am.*, 518 F.3d 755, 758 (10th Cir. 2008). "We review the district court's determinations of state law de novo." *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995).

"We review a grant of summary judgment *de novo*, taking the facts and the reasonable inferences to be drawn from them in the light most favorable to the nonmoving party." *Justice v. Crown Cork & Seal Co.*, 527 F.3d 1080, 1085 (10th Cir. 2008) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Justice*, 527 F.3d at 1085 (internal quotation marks omitted).

There are two separate, but somewhat related, reasons why Boostpower was entitled to summary judgment: the lack of causation and misuse of the product. Under Oklahoma law, a claim of strict liability in tort, as a theory of product liability, requires a plaintiff to prove, among other things, that the product was the cause of the injury. *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353, 1363 (Okla. 1974). "Causation is established if 'in a natural and continuous sequence, unbroken by independent cause' the [product] produces an injury that would not have occurred if it had not been administered." *Hollander v. Sandoz Pharm. Corp.*, 289 F.3d 1193, 1214 (10th Cir. 2002) (quoting *Gaines v. Providence Apartments*, 750 P.2d 125, 126-27 (Okla. 1987)). In terms of causation, we agree with the district court that "after the threat presented by the allegedly defective parts was known and completely neutralized twice, it can hardly be said that the fatal fire was the endpoint of 'a natural and continuous sequence, unbroken by an independent cause.'" Aplt. App. at 347 (quoting *Hollander*, 289 F.3d at 1214).

Oklahoma law recognizes that "an abnormal use or misuse of [a] product . . . is a complete defense to strict liability." *Kirkland*, 521 P.2d at 1367. "In order to determine whether the use of a product by a plaintiff is abnormal, we must ask whether it was reasonably foreseeable by the manufacturer. A manufacturer is not liable for injuries resulting from such use if it is not foreseeable." *Fields v. Volkswagen of Am., Inc.*, 555 P.2d 48, 56-57 (Okla. 1976). As the district court explained, "in terms of misuse, the dispositive fact is the use of a fuel rail that

- 5 -

was known to be loose, resulting in a fuel injection system that was known (because it had twice shown that it would spray fuel onto at least one occupant of the boat) to be incapable of retaining pressurized fuel." Aplt. App. at 347. As such, we agree with the court's conclusion that "[t]his was plainly a 'method of using a product . . . that . . . the maker [did not] intend[] or [was] a use that could not reasonably be anticipated by the manufacturer.'" *Id.* (quoting *Fields*, 555 P.2d at 56).

Plaintiff argues that the defense of misuse is available only when the misuse occurs prior to the discovery of the defect. We agree with Boostpower that this unsupported argument is illogical. We also agree that it is at odds with "the foundational underpinnings of strict products liability law," Aplee. Br. at 16, which contemplates hidden or unknown dangers. *See Kirkland*, 521 P.2d at 1362-63 (recognizing that a product is unreasonably dangerous when it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics") (internal quotation marks omitted).

The judgment of the district court is affirmed.

Entered for the Court

Jerome A. Holmes
Circuit Judge

- 6 -