Charles Leon **MANOUS**, Surviving Spouse and Personal Representative of the Estate of Carol Ann Manous, deceased, Plaintiff,

v.

**MYLAN PHARMACEUTICALS INC., Defendant.**

**No. CIV–11–1330–R.**

United States District Court, W.D. Oklahoma.

Aug. 23, 2013.

Emmanuel E. Edem, L. Mark Bonner, Norman & Edem PLLC, Oklahoma City, OK, for Plaintiff.

Clem C. Trischler, Jason M. Reefer, Pietragallo Gordon Alfano Bosick & Raspanti LLP, Pittsburgh, PA, Jon Epstein, Hall Estill, Oklahoma City, OK, for Defendant.

## ORDER

DAVID L. RUSSELL, District Judge.

This matter comes before the Court on the Motion for Summary Judgment, filed by Defendant, Mylan Pharmaceuticals, Inc. Plaintiff responded in opposition to the motion. Having considered the parties' submissions, the Court finds as follows.

Plaintiff alleges Defendant is liable for the death of his spouse, Carol Manous, who died on March 12, 2010. At the time of her death, Mrs. Manous was wearing two 100 ng/ml Mylan Fentanyl Transdermal System patches, as prescribed.[1] The medical examiner did not conduct an autopsy, concluding based on postmortem blood tests that she had died as a result of acute Fentanyl toxicity.[2] Plaintiff contends that a manufacturing defect resulted in one or both of the two patches being worn at the time of her death to release an excess Fentanyl into Mrs. Manous's system, causing her death. Defendant denies liability and seeks summary judgment, contending that Plaintiff cannot prove that the patches, which were discarded by the medical examiner, were defectively manufactured. In large part Defendant relies on its motion to exclude the testimony of Plaintiff's expert, Dr. James Bartling, which the Court has granted by separate order. Accordingly, if Plaintiff is to survive the instant motion, there must be admissible record evidence, that supports his theory of a defect in the Mylan patches and Oklahoma law must not require an expert to support his theory.

■ Defendant cites to *Strubhart v. Perry Mem'l Hosp. Trust Auth.*, 903 P.2d 263 (Okla.1995), in support of its theory that the absence of an expert is fatal to Plaintiff's case. Therein the court concluded that "[e]xpert testimony is required where the fact in issue is not within the realm of ordinary experience of mankind." *Id.* at 274. The Tenth Circuit applied this holding to an Oklahoma product liability case regarding prescription drugs in *Hollander v. Sandoz Pharmaceuticals. Corp.*, 289 F.3d 1193, 1214 (10th Cir.2002), noting that in order to assess the arguments regarding the effects of the drug at issue, the plaintiff would need expert testimony, which was lacking. As such, the Court finds that Plaintiff in this case cannot proceed to trial, because he is missing an expert to explain his contentions regarding the defective manufacture of the patches. Furthermore, even if Plaintiff could proceed without an expert, he could not prevail.

In *Kirkland v. Gen. Motors Corp.*, 521 P.2d 1353 (Okla.1974), Oklahoma adopted the doctrine of manufacturer's products liability. In so doing, the Oklahoma Supreme Court set forth three elements a plaintiff must establish: the product was the cause of the injury; the defect existed in the product at the time the product left the Defendant's possession and control; and the defect made the article unreason-

---

1. Mrs. Manous suffered from multiple sclerosis, intractable pain syndrome, hypertension, obesity, severe obstructive sleep apnea and depression.

2. The blood sample, taken hours after hear death, indicate a level of 28.1 ng/ml.

ably dangerous. *Id.* at 1363. "Unreasonably dangerous" is defined as " 'The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.' " *Id.* at ¶ 26, 1362–63 (quoting *Restatement (Second) of Torts* § 402A). Plaintiff argues that clearly there was a defect in the product based on the medical examiner's conclusion and the amount of Fentanyl in Mrs. Manous' postmortem blood sample. Defendant contends Plaintiff cannot rely solely on the postmortem blood levels, because Fenatnyl is subject to postmortem redistribution, whereby stored Fentanyl redistributes from tissue into the blood following death.

■ The Court finds this case similar to *Wheeler v. HO Sports, Inc.*, 232 F.3d 754 (10th Cir.2000). In *Wheeler,* the plaintiff's allegations included a claim that a life vest worn by her deceased husband was defectively manufactured, which resulted in his drowning. The court noted:

> A product is defective in manufacture if it "deviates in some material way from its design or performance standards. The issue is whether the product was rendered unsafe by an error in the manufacturing process." *Jones by Jones v. Lederle Labs.*, 695 F.Supp. 700, 706 (E.D.N.Y.1988). Errors in the process are often established by showing that a product, as produced, failed to conform with the manufacturer's specifications. *Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir.1997) (applying Colorado law) (citation omitted)

*Wheeler,* 232 F.3d at 757. One of the plaintiff's manufacturing claims asserted that "her husband's vest must have been manufactured defectively because he sank." *Id.* This claim was premised on the fact that Defendant's experts had performed testing, during that testing five men wearing identical vests floated at the surface despite their efforts to submerge themselves.

> To establish a manufacturing defect under Oklahoma law ... Plaintiff 'must offer ... [a] theory as to the cause of the defect.,' going beyond a mere 'assertive statement that the defect occurred during the manufacturing.' *Kimbrell,* [*v. Zenith Radio Corp.*], 555 P.2d [590], 593 [ (Okla.1976) ]. Plaintiff has not done so. Although Plaintiff presumes that the fact of her husband's drowning proves the vest to have been defectively manufactured, the Oklahoma Supreme Court has held that; "the mere happening of an accident raises not presumption' ... of defectiveness in the article involved in the accident." *Kirkland,* 521 P.2d at 1363 (quoting *Lyons v. Valley View Hosp.*, 341 P.2d 261 (Okla.1959)). Plaintiff has not established that a deviation from performance standards occurred nor that an error occurred in the manufacturing process.

*Id.* at 757–58. The Court finds *Wheeler* indistinguishable from the facts of the instant case. Although Plaintiff theorizes that one of the two patches Mrs. Manous was wearing at the time of her death was defective, there is simply no evidence to support the theory. There is no evidence of an error in the manufacturing process. Even Plaintiff's expert, whose testimony the Court has concluded is inadmissible, could not identify how the Mylan Fentanyl Trandermal system could have been defective. As such, and because permitting Plaintiff to proceed would be permitting him to rely solely on speculation, the Court finds that Defendant is entitled to summary judgment.

In support of his position Plaintiff relies on a decision in *Richardson v. Mylan Inc.*, Case No. 09 CV 1041 JM, from the South-

ern District of California, denying Mylan's motion for summary judgment with regard to a death allegedly caused by the same system at issue herein. The distinction between that case and this one, however, is readily apparent. Therein the plaintiff relied on circumstantial evidence, the discrepancy between the concentration of Fentanyl in the decedent's blood postmortem and the expected concentration in an antemortem blood sample, "combined with expert testimony regarding possible design or manufacturing defects." Order, p. 4. Here, there is simply no such expert testimony and the Court concludes that pursuant to Oklahoma law, the elevated fentanyl level in Mrs. Manous' blood postmortem is not sufficient to sustain Plaintiff's claims.

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED.[3]

---

**3.** To the extent Plaintiff cites to articles he did not include in his submission to the Court, the Court declines to seek out the articles. Additionally, providing a response brief filed in a separate case without the supporting evidence is not sufficient to meet the burden at summary judgment.